

1999 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-2-1999

# USA v Medford

Precedential or Non-Precedential:

Docket 98-1647,98-1648

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1999

Recommended Citation

"USA v Medford" (1999). *1999 Decisions.* Paper 190.
http://digitalcommons.law.villanova.edu/thirdcircuit_1999/190

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1999 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed July 2, 1999

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Nos. 98-1647 & 98-1648

UNITED STATES OF AMERICA

v.

ERNEST MEDFORD,

　　　Appellant in 98-1647

UNITED STATES OF AMERICA

v.

GEORGE CSIZMAZIA,

　　　Appellant in 98-1648

ON APPEAL FROM THE
UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

(Nos. 98-cr-00045-01 & 98-cr-00045-02)
(District Judge: Honorable Clarence C. Newcomer)

Submitted Under Third Circuit LAR 34.1(a)
May 25, 1999

Before: GREENBERG and ALITO, Circuit Judges,
ACKERMAN, District Judge,1

(Opinion Filed: July 2, 1999)

_____

1. The Honorable Harold A. Ackerman, Senior Judge of the United States
District Court for the District of New Jersey, sitting by designation.

Michael R. Stiles
United States Attorney
Walter S. Batty, Jr.
Chief of Appeals
Robert E. Goldman
Assistant U.S. Attorney
U.S. Attorney's Office
615 Chestnut Street
Philadelphia, PA 19106

Counsel for Appellee

George Henry Newman, Esq.
Newman & McGlaughlin
834 Chestnut Street
Suite 206
Philadelphia, PA 19107

Counsel for Appellant
Ernest Medford

Donald M. Moser, Esq.
Washington West Building
235 South 8th Street
Philadelphia, PA 19106

Counsel for Appellant
George Csizmazia

OPINION OF THE COURT

ALITO, Circuit Judge:

Ernest Medford and George Csizmazia ("defendants") appeal their sentences after pleading guilty to conspiracy, theft, and receipt of cultural objects from a museum in Philadelphia. On appeal, defendants contend that the government violated the plea agreement and that the District Court misapplied the United States Sentencing Guidelines. For the reasons explained below, we conclude that the government satisfied its obligations under the plea agreement but that the District Court erred in applying the

2

sentencing guidelines. We therefore vacate defendants' sentences and remand for further proceedings.

I.

The Historical Society of Pennsylvania ("HSP"), founded in 1824 and located in Philadelphia, exhibits antiques and other historical items to the public. Defendant Medford worked as a custodian at the HSP for approximately 18 years. During that time, he met defendant Csizmazia, a collector of antiques, who was working as a contractor at the HSP. The defendants agreed that Medford would steal items from the museum and sell them to Csizmazia.

Over a ten-year period, Medford pilfered approximately 200 valuable items from the museum, including a sword presented to George G. Meade for his military accomplishments during the Civil War, a 1735 gold snuff box presented to Andrew Hamilton for successfully defending J. Peter Zenger in his libel trial, a ring containing a lock of George Washington's hair, an ivory tea caddy that belonged to George Washington, a telescope used by Elisha Kent Kane during his 1853 exploration of the arctic region, lockets containing the hair of John Brown and Andrew Jackson, the wedding band of Patrick Henry's wife, a silver pitcher presented to a physician for his efforts during the 1848 smallpox epidemic in Philadelphia, and a Lancaster County long rifle crafted in 1785 by Isaac Haines, one of Philadelphia's finest gunsmiths. For a paltry sum, Medford sold these items to Csizmazia, who concealed them at his residence. All of the items have been recovered.

Defendants entered into a plea agreement under which the government promised to "[m]ake a motion to allow the District Court to depart from the Sentencing Guidelines pursuant to Sentencing Guidelines S 5K1.1, if the government in its sole discretion, determines that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense . . . ." Csizmazia App. at 24-25; Medford App. at 9-10. Defendants pleaded guilty to conspiracy, in violation of 18 U.S.C. S 371; theft of objects of cultural heritage, in violation of 18 U.S.C.S 668(b)(1);

3

and receipt and concealment of stolen objects of cultural heritage, in violation of 18 U.S.C. S 668(b)(2).[2]

At sentencing, the District Court applied U.S.S.G. S 2B1.1, which provides a base offense level of four for a variety of larceny offenses, including offenses committed under 18 U.S.C. S 668. The Court then enhanced defendants' base offense levels 15 points because the amount of loss sustained by the HSP exceeded $2.5 million. See U.S.S.G. S 2B1.1(b)(1)(P). In arriving at that figure, the District Court considered the appraisals proffered by the government. The experts who made the appraisals had determined that the total monetary value of the stolen items ranged between $2,452,471 and $2,579,500. Over the defendants' objection, the District Court selected the midpoint of the two estimates for a total loss of $2,515,985.50. The Court reasoned: "[I]t is entirely appropriate for the Court to accept a valuation . . . which is based upon two expert appraisals . . . and to utiliz[e] the midpoint range." Csizmazia App. at 72a; Medford App. at 24.

The Court next considered the government's section 5K1.1 motion for a downward departure. The government declared that its section 5K1.1 motion merely granted the District Court "permission" to depart downward, but that the government "certainly [did not] recommend a downward departure." See Csizmazia App. at 81a; Medford App. at 33. Specifically, the government stated:

_____

2. 18 U.S.C. S 668(b) provides, in pertinent part:

       Any person who–

       (1) steals or obtains by fraud from the care, custody, or control
of
       a museum any object of cultural heritage; or

       (2) knowing that an object of cultural heritage has been stolen or
       obtained by fraud, if in fact the object was stolen or obtained
from
       the care, custody, or control of a museum (whether or not that
       fact is known to the person), receives, conceals, exhibits, or
       disposes of the object,

       shall be fined under this title, imprisoned not more than 10 years,
       or both.

18 U.S.C. S 668(b)(1), (2).

4

> [T]he motion for downward departure . . . permits the Court to depart downward. . . . [T]hat's what the Government is saying, you're permitted, I'm not granting you permission, but under the rules it provides that I'm giving you discretion [to depart downward based on defendants' substantial assistance] . . . . [W]e told both counsel that we wouldfile a weak 5K. And a weak 5K in our opinion is [one that] grants discretion to depart downwards, but we certainly don't recommend a downward departure.

Csizmazia App. at 83a; Medford App. at 35. The District Court denied the motion.

The District Court heard victim impact testimony from the President of the HSP, Susan Stiff ("Stiff "). See Csizmazia App. at 106a–108a; Medford App. at 58–60. Stiff explained that defendants' actions had damaged one of the museum's most important assets –- its reputation as a responsible steward of important national treasures-- "in ways that cannot be quantified." Csizmazia App. at 107a; Medford App. at 59. Stiff noted that the damage caused by defendants could decrease financial contributions, reduce donations of valuable historical objects, and diminish the HSP's ability to attract qualified individuals to serve as trustees and staff members. See Csizmazia App. at 106a–107a; Medford App. at 58–59. Because of the harm caused to the HSP and the public, Stiff implored the District Court to "to impose the heaviest possible sentence on both defendants." Csizmazia App. at 107a–108a; Medford App. at 59–60. The government concurred. Csizmazia App. at 108a; Medford App. at 60.

Finding that the defendants' sentencing range of 27 to 33 months did not "sufficiently encompass[ ] the egregiousness of the offenses that were involved," the District Court departed upward four levels from the guidelines. Csizmazia App. at 109a; Medford App. at 61. However, the Court did not advise the defendants prior to the sentencing hearing that it intended to depart upward.

The District Court sentenced the defendants to 48 months of imprisonment, and the defendants took this appeal. Defendants claim that the government (1) violated

5

the plea agreement by filing a motion for downward departure and then stating at the sentencing hearing that it did not recommend departure and (2) acted in bad faith by failing to make "a more concerted 5K1.1 downward departure motion at the time of sentencing." Csizmazia Br. at 15. Defendants also contend that the District Court misapplied the Sentencing Guidelines by (1) arbitrarily selecting the middle value of the high and low estimates of the fair market value of the stolen items as the amount of loss sustained by the HSP; (2) departing upward without providing sufficient advance notice of its intentions; (3) departing upward on a ground that had already been taken into consideration by the Guidelines; and (4) departing upward four levels without articulating its reason for the extent of the departure. We address each argument in turn.

II.

Defendants contend that the government violated the plea agreement by filing a downward departure motion and then stating at the sentencing hearing that it did not recommend a downward departure. Defendants also claim that the government acted in bad faith by failing to make "a more concerted 5K1.1 downward departure motion at the time of sentencing." Csizmazia Br. at 15.3 As a remedy, defendants seek a remand for resentencing before a different judge. "Whether the Government violated a plea agreement is a question of law subject to de novo review." See United States v. Huang, 178 F.3d 184, 187 (3d Cir. 1999) (citing United States v. Roman, 121 F.3d 136, 142 (3d Cir. 1997), cert. denied, 118 S. Ct. 722 (1998)). We reject defendants' claims.

Section 5K1.1 of the Guidelines provides:

Upon motion of the government stating that the

_____

3. Defendants' contention that the government violated the plea agreement by requesting the court to impose the heaviest sentence possible on the defendants is frivolous. In the plea agreement, the government reserved the right to "[m]ake whatever sentencing recommendation the government deems appropriate. . .." Csizmazia App. at 25; Medford App. at 10.

6

> defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense, the court may depart from the guidelines.

U.S.S.G. S 5K1.1. We have held that, in the absence of two circumstances not present here, a District Court may not depart below the guideline range based on a defendant's substantial assistance unless the government makes a motion to permit such a departure. See United States v. Abuhouran, 161 F.3d 206, 211-212 (3d Cir. 1998), cert. denied, 119 S. Ct. 1479 (1999).

In this case, the plea agreement required the government "to mak[e] a motion to allow the Court to depart from the Sentencing Guidelines pursuant to Sentencing Guidelines S 5K1.1, if the government, in its sole discretion, determines that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense. . . ." Csizmazia App. at 24-25 (emphasis added); Medford App. at 9-10. We interpret the plain terms of the plea agreement to require only that the government file a S 5K1.1 motion in order to give the District Court the power ("to allow the Court") to depart downward under that provision. Contrary to defendants' suggestions, the plea agreement did not require the government to recommend a downward departure at the sentencing hearing; nor did it prohibit the government from stating at the sentencing hearing that it did not recommend departure. Therefore, when the government filed the 5K1.1 motion, it complied with the terms of the plea agreement.4

In addition, we find no basis for the defendants' contention that the government acted in bad faith by failing to make "a more concerted 5K1.1 downward departure motion at the time of sentencing." Csizmazia Br. at 15. In making this contention, defendants cite United States v.

_____

4. It is true that the plea agreement could have been more explicit in stating that, while the government was obligated to make a S 5K1.1 motion, the government was reserving the right to take whatever recommendation it chose as to whether a downward departure should be granted. In future cases, it would be advisable for the government to make this point explicit.

7

Isaac, 141 F.3d 477 (3d Cir. 1998), in which we held that the government's failure to file a 5K1.1 motion as required under the plea agreement must not result from bad faith. Defendants' reliance on Isaac, however, is misplaced. Here, the government filed a S 5K1.1 motion and in so doing complied with its obligation under the plea agreement. Accordingly, we fail to perceive any bad faith on the government's part.

For these reasons, we conclude that the government satisfied its obligation under the plea agreement and that the government's actions were not in bad faith. We therefore deny defendants' request for resentencing before a different judge.

III.

Defendants also contend that the District Court erred in enhancing their base offense levels because it arbitrarily selected the midpoint between the high and low estimates of the stolen items' fair market value as the amount of loss sustained by the HSP and stated, without further explanation, that doing so is "entirely appropriate."5 We review the District Court's findings for clear error. See United States v. Miele, 989 F.2d 659, 663 (3d Cir. 1993). We agree with defendants.

U.S.S.G. S 2B1.1 establishes a defendant's base offense level for offenses involving theft of property. See U.S.S.G. S 2B1.1 (1997). For offenses under 18 U.S.C.S 668, the defendant's base offense level begins at four and is increased depending on the amount of the loss sustained as a result of the illegal conduct. See U.S.S.G. S 2B1.1(a), (b)(1). In determining the amount of loss sustained, courts are instructed to ascertain the fair market value of the stolen items. See U.S.S.G. S 2B1.1, commentary n.2. We have held that in cases in which the fair market value ranges between two estimates and either end of the range is equally plausible, courts generally should adopt the lower

_____

5. Had the District Court selected the lower estimate, the defendants would have received a 14-level increase in their base offense levels, rather than the 15-level increase that they received.

end of the estimated range. See Miele, 989 F.2d at 665-66 (citing United States v. Walton, 908 F.2d 1289, 1302 (6th Cir. 1990). However, "where there is other evidence to support the higher end of an estimated range, the court may certainly rely on the higher estimate." Miele, 989 F.2d at 665-66. Such other evidence must be supported by "sufficient indicia of reliability," and the court must explain on the record why it relied on the estimate at the higher end. Id. at 668 ("We require that the district court articulate more than a conclusory finding . . . . The district court may not rest its decision upon facts until it determines that the fact or facts have sufficient indicia of reliability to support a conclusion that they are probably accurate.").

The decision of the District Court violates Miele. In determining that the fair market value of the stolen items exceeded $2.5 million, the District Court selected the middle value of the high and low estimates without assessing the reliability of the higher estimate. In addition, the District Court did not articulate an adequate evidentiary basis for selecting the middle value of the two estimates, as opposed to selecting the low end of the range. Accordingly, as the government requests, we vacate the defendants' sentences and remand for resentencing in accordance with Miele.

IV.

Defendants further maintain that remand is required under Burns v. United States, 501 U.S. 129, 138 (1991), because the District Court departed upward without providing advance notice to the defendants of its intention to upwardly depart. We agree. In Burns, the Supreme Court held:

> Before a district court can depart upward on a ground not identified as a ground for upward departure either in the presentence report or in a prehearing submission by the Government, Rule 32 [of the Federal Rules of Criminal Procedure] requires that the district court give the parties reasonable notice that it is contemplating such a ruling.

9

Id.; see also United States v. Barr, 963 F.2d 641, 655 (3d Cir. 1992). The government recognizes that the District Court "did not provide the defense with sufficient advance notice of [its] intention to upwardly depart from the guidelines," and therefore it concedes that the District Court committed plain error. Appellee's Br. at 9. In light of Burns and the position taken by the government, we vacate the sentences imposed by the District Court and remand for resentencing.

Although we are remanding to the District Court, we will address one further issue relating to the upward departure that was briefed to us here and that no doubt will be raised on remand. Defendants contend that the District Court's upward departure was improper because the cultural value of the stolen objects is an element of 18 U.S.C.S 668 already taken into consideration by the Sentencing Guidelines. We review the District Court's findings of fact for clear error and its legal conclusions de novo. See United States v. Hillstrom, 988 F.2d 448, 450 (3d Cir. 1993). We reject defendants' argument.

As noted above, S 2B1.1 provides for increases in the defendants' sentence depending upon the amount of loss sustained by the victim of the offense. See U.S.S.G. S 2B1.1, background commentary ("The value of property stolen plays an important role in determining sentences for theft and other offenses involving stolen property because it is an indicator of both the harm to the victim and the gain to the defendant."). In making this determination, the Guidelines instruct the courts to ascertain the fair market value of the stolen items. See U.S.S.G. S 2B1.1, commentary n.2. The application notes recognize, however, that in some cases, the monetary loss will not "fully capture the harmfulness of the conduct." See U.S.S.G. S 2B1.1, commentary n.15. In those cases, the application notes provide that "an upward departure may be warranted." Id.

In this case, after enhancing the defendants' offense level by 15 based on the fair market value of the stolen items, the District Court departed upward four levels because the applicable sentencing range did not "sufficiently encompass the egregiousness of the offenses that were involved here."

10

Csizmazia App. at 109a; Medford App. at 61. The Court explained:

> [T]he conduct that [the defendants] engaged in is an assault and affront to our culture, to our society, and . . . must be dealt with accordingly. [T]he intangibles . . . involved . . . and the effects that they have . . . had upon the institution itself -- both here in Philadelphia and . . . throughout the country -- mandate that the court . . . issue an upward departure in this case.

Csizmazia App. at 109a-110a; Medford App. at 61-62.

We agree with the District Court. The price set by the commercial market is insufficient to "fully capture the harmfulness of the [defendants'] conduct." The antiques stolen in this case unquestionably have historical and cultural importance. Moreover, the thefts affected the HSP in ways different in kind from a loss of money or other easily replaceable property, for these thefts damaged the HSP's reputation. In addition, the monetary value of these objects does not adequately take into consideration the real but intangible harm inflicted upon all of the other victims of the offense, including the City of Philadelphia and the general public. Because section 2B1.1 applies to thefts that cause financial harm to the immediate victim of the offense, the non-monetary damage caused here and the harm inflicted upon the public at large justify the District Court's upward departure.

The defendants contend that the upward departure was impermissible because "the Sentencing Commission, in setting the offense level . . . for theft of objects of cultural heritage, took into account the very fact that the items stolen were items of cultural heritage." Medford Br. at 13. This argument, however, fails to take Application Note 15 into account and overlooks the fact that U.S.S.G.S 2B1.1 applies to a variety of theft offenses that do not involve objects of cultural heritage. To take just one example, U.S.S.G. S 2B1.1 applies to the offense of transporting stolen motor vehicles in interstate or foreign commerce, in violation of 18 U.S.C. S 2312. Thus, under U.S.S.G. S 2B1.1, a defendant who transports stolen motor vehicles valued at $x across state lines is treated the same as a

11

defendant who steals objects of cultural heritage having the same fair market value. Because U.S.S.G. S 2B1.1 does not take into account the non-monetary significance of objects of cultural heritage, a departure may be warranted, as Application Note 15 suggests.

Finally, defendants contend that the District Court erred in failing to explain its reason for a four-level upward departure. Because we are remanding to the District Court, we note only that the District Court should state on the record its reason for the extent of the departure. See United States v. Kikumura, 918 F.2d 1084 (3d Cir. 1990).

V.

Accordingly, we vacate the defendants' sentences and remand for resentencing in accordance with this opinion.

A True Copy:
Teste:

      Clerk of the United States Court of Appeals
      for the Third Circuit