

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-26-2003

# USA v. Maswadeh

Precedential or Non-Precedential: Non-Precedential

Docket 02-2663

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation

"USA v. Maswadeh" (2003). *2003 Decisions*. Paper 714.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/714

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 02-2663

_____

UNITED STATES OF AMERICA

v.

ARAFAT MASWADEH,
                                    Appellant

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
D.C. Crim. No. 01-cr-00146-1
District Judge:  The Honorable William W. Caldwell

_____

Submitted Under Third Circuit LAR 34.1(a)
March 7, 2003

_____

Before: ROTH, BARRY, and FUENTES, Circuit Judges

(Opinion Filed: March 25, 2003)

_____

OPINION

_____


BARRY, Circuit Judge

    On November 26, 2001, after a four-day jury trial, appellant Arafat Maswadeh was

convicted of all counts of which he was indicted, including racketeering, 18 U.S.C. §

1952(a)(3), arson, 18 U.S.C. § 844(I), use of fire to commit mail fraud,18 U.S.C. § 844(h),

solicitation to commit arson,18 U.S.C. § 373, conspiracy to commit interstate travel in aid of the above crimes, 18 U.S.C. § 371, and four counts of mail fraud, 18 U.S.C. §1341.  On May 31, 2002, the District Court sentenced Maswadeh to an aggregate sentence of 360 months imprisonment and five years of supervised release, and ordered that he pay restitution in the amount of $1,355,358.

On appeal, Maswadeh argues that the District Court erred in numerous ways at trial and sentencing, including: (1) not postponing the trial in the wake of the tragic events of September 11, 2001; (2) denying his motion for an order requiring the government to produce Giglio or impeachment material more than one week in advance of trial; (3) denying his motion for judgment of acquittal based on the insufficiency of evidence; (4) denying his request to allow a particular exhibit to go to the jury room unredacted; (5) giving him a one-level upward sentence adjustment for being an organizer or leader; (6) assessing one criminal history point for a sentence of six-months imprisonment upon a finding of criminal contempt for non-payment of child support; and (7) departing upward from the otherwise applicable guideline range by eight offense levels based on the effect of his arson on the community, its economy, and the victims.  We have jurisdiction pursuant to 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291 and will affirm.


**I.**

As we write primarily for the parties, we recount only those facts necessary to our

decision. This prosecution arose from a fire that decimated half of an entire city block in downtown Carlisle, Pennsylvania in the early morning hours of December 18, 1999. Investigators determined that the fire, which destroyed or damaged seven businesses and sixteen residential apartments leaving 55 people homeless, originated in the New York Deli, on the ground floor of 48 West High Street, a deli owned by Maswadeh. They also concluded, after finding two red gasoline containers just inside the back door of the deli, that the cause of the fire was arson. Maswadeh, a Palestinian Arab and naturalized United States citizen, was implicated in the arson when some of his co-conspirators, who were under investigation for dealing drugs out of an apartment above the deli, told federal agents that Maswadeh had wanted the deli burned in order to collect the insurance money.

After Maswadeh was indicted for the arson but prior to trial, the District Court held a hearing on defense counsel's motions to withdraw as counsel and to revoke the order of pretrial detention. Maswadeh stated that he had changed his mind and was satisfied with his present counsel. Defense counsel then informed the Court that he had recommended to Maswadeh that the trial be postponed to avoid any potential jury bias against Maswadeh because of his Arab ethnicity or Muslim religion due to the events of September 11, 2001. Maswadeh, however, expressly told the Court that he did not want to postpone the trial. The Court observed that it would be willing to do so if Maswadeh should change his mind before trial. The Court declined to revoke its prior order detaining Maswadeh pending trial. As part of a later "omnibus" pre-trial motion, Maswadeh moved for an order requiring the government to provide for early disclosure of impeachment material to the defense. The

3

Court ordered that the government deliver that material one week before trial, in keeping with the regular practice of the Court.

At trial, the primary evidence against Maswadeh was the testimony of his three co-conspirators: Keith Walker, Alonzo "Pooh" Thornton, and Eric "Joe" Anilus. Thornton, who lived in New York City but dealt drugs in Carlisle through Anilus and others, testified that in September of 1999, Maswadeh offered to pay him $20,000 to set fire to the New York Deli while he was out of the country in Israel. Although Thornton did not follow through with the fire while Maswadeh was in Israel, he ultimately enlisted Keith Walker, a drug-addict who also lived in New York City, to set fire to the deli for $1,000.

Walker, the only other defendant indicted for the arson (Thornton and Anilus having pled guilty only to drug charges), testified that Thornton took him to Carlisle by bus on September 17, 1999. He and Thornton were met by Anilus, who took them to the apartment over the deli at 48 West High Street, where Thornton had previously stashed two containers of gasoline. Walker waited in the apartment until approximately 3:00 a.m. when he went to the back door of the New York Deli, pried off some wood panels using a crowbar that Anilus had given him, and set the fire. He returned to New York by bus the next morning. Anilus corroborated Thornton and Walker's testimony at trial. Anilus testified that he was present at two different times when he heard Thornton and Maswadeh discussing the fire, that he went to Maswadeh's house the day before the fire to obtain the crowbar, and that he showed Walker where the back door of the New York Deli was and paid Walker $600 cash given to him by Thornton.

Two other witnesses called by the government included Nadeem Khan, who believed that he had purchased the New York Deli from Maswadeh and was operating the deli for several weeks before the fire, and Merle "Gene" Miller, the insurance broker who had issued the insurance policy on the New York Deli. Khan testified that he had purchased the deli the month before the fire, and believed that Maswadeh had transferred the insurance to his name. Miller testified that, in August of 1999, at the request of Khan and Maswadeh, he had drawn up the necessary papers to transfer insurance coverage to Khan's name, but in late August, Maswadeh told him that the sale had fallen through and that the insurance should remain in Maswadeh's name.

Defense counsel cross-examined Miller about a memorandum he wrote after the fire to the State Auto Insurance Companies, the issuer of the policy, which noted, among other things, that Khan had put in an immediate claim after the fire and seemed very upset, while Maswadeh did not contact Miller for two days after the fire, and did not seem very concerned. The memorandum was admitted as a defense exhibit. At the close of trial, the prosecution successfully objected to Miller's memorandum going into the jury room unredacted because only a small portion of the memorandum had been discussed in trial testimony. Although the Court expressed a willingness to allow a redacted version to go to the jury, no such version of the exhibit was ever submitted to the Court by the parties or sent to the jury.

Maswadeh's presentence report calculated an offense level of 26 pursuant to section 2K1.4 of the Sentencing Guidelines because of Maswadeh's knowing creation of a

substantial risk of death or serious bodily harm with a two level enhancement under section 3B1.1(c) due to Maswadeh's status as the organizer and manager of the arson. The presentence report also determined that Maswadeh had four criminal history points, resulting in a criminal history category of III. One of the criminal history points was based on Maswadeh's six-month sentence of imprisonment for contempt of court based on his failure to pay child support, contempt purged two weeks later when Maswadeh paid the requisite support. The resulting guideline range was 78 to 97 months for all counts other than count five, which alleged a violation of 18 U.S.C. § 844(h) with a statutory mandatory minimum of ten years imprisonment to run consecutively with any other sentence, for a total potential guideline sentence of 198 to 217 months.

At sentencing on May 31, 2002, the District Court heard testimony from two government witnesses: the mayor of Carlisle testified concerning the damage that the fire had done to the economy of Carlisle and efforts to revitalize the downtown area, and a resident of one of the burned apartments testified concerning the emotional difficulties her children had experienced in the two years since the fire. After hearing the arguments of counsel, the Court added a two-level enhancement for obstruction of justice, finding that Maswadeh had committed perjury when he testified at trial, and also departed upward eight levels, from an offense level of 28 to an offense level of 36. The Court articulated four grounds for the eight-level departure, adding two levels for each: (1) the danger posed to the public was in substantially in excess of that involved in an ordinary arson; (2) the negative effect the fire had upon the revitalization of historic downtown Carlisle; (3) the

6

negative effect the fire had on eight downtown businesses resulting in a substantial loss of property, jobs and tax revenue; and (4) the psychological and emotional trauma suffered by the 55 residents awakened by the fire in the middle of the night and rendered homeless. After making these adjustments, the District Court sentenced Maswadeh to 360 months imprisonment.

## II.

As an initial matter, all of the arguments Maswadeh advances on appeal other than those dealing with his sentence are patently without merit. We discern no abuse of discretion in the District Court's decision to proceed with trial in November of 2001 where Maswadeh himself informed the Court that he would rather not postpone the trial despite the Court's willingness to do so, and where his counsel never moved for a continuance. Similarly, and wholly apart from the reasons why there should not be a rule of early disclosure of impeachment material, given that Maswadeh's counsel concedes that he cannot show that the government's delivery of impeachment materials one week before trial resulted in any prejudice to the defense case, the District Court's denial of Maswadeh's motion for earlier production was not reversible error. Cf. United States v. Starusko, 729 F.2d 256, 262 (3d Cir. 1984) (late discovery warrants reversal only if it prejudiced defendant). Also, it was well within the District Court's discretion, see United States v. Casoni, 950 F.2d 893, 902 (3d Cir. 1992), to deny Maswadeh's request to allow Miller's lengthy but unredacted memorandum to go to the jury, especially where the prosecution expressed willingness to allow the jury to have a properly redacted version of

the exhibit.

As for the sufficiency of the evidence, although Maswadeh notes some minor inconsistencies in the testimony of his co-conspirators at trial, our independent review of the record shows that the cross-examinations and closing arguments by the defense made the jury well-aware of these inconsistencies as well as any possible interest in giving testimony favorable to the prosecution. Thus, it was well within the jury's factfinding role, after weighing the evidence as a whole, to credit the co-conspirators' testimony. Viewing, as we must, the evidence in the light most favorable to the government, see United States v. Rosario, 118 F.3d 160, 163 (3d Cir. 1997), there was ample evidence to allow a reasonable jury to find Maswadeh guilty beyond a reasonable doubt.

We thus move to Maswadeh's various objections to his admittedly severe 30 year sentence. First, he argues that the District Court improperly accepted the presentence report's recommendation that he be given a two-level enhancement under section 3B1.1(c) of the Sentencing Guidelines because he was an "organizer, leader, manager, or supervisor" of the arson conspiracy. We find this objection without merit. The arson scheme was conceived by Maswadeh, who recruited accomplices, specified when and how the crime was to be accomplished, and stood to benefit much more (retaining $150,000 of the $200,000 in anticipated insurance proceeds) than the other co-conspirators. According to both the commentary to section 3B1.1 and this Court's precedent, these actions clearly clothe Maswadeh as the leader and organizer of the crime for purposes of the enhancement. See U.S.S.G. § 3B1.1 cmt. 4; United States v. Gricco, 277 F.3d 339, 358 (3d Cir. 2002).

8

For his second objection to his sentence, Maswadeh argues that the District Court erred in calculating his criminal history category. On October 5, 2002, the Court of Common Pleas of Cumberland County, Pennsylvania, found Maswadeh in contempt of court for failure to pay child support and sentenced him to six months imprisonment. The sentence was vacated 15 days later when Maswadeh satisfied his support obligations. Maswadeh argues that the District Court improperly added one criminal history point for this six-month sentence for civil contempt because it was not a criminal conviction. We disagree. The District Court properly included the contempt sentence pursuant to the plain language of section 4A1.2(c) of the Sentencing Guidelines, which expressly provides for the inclusion of a sentence for an offense that is "similar" to a list of minor offenses, citing both "Contempt of Court" and "Non-Support." U.S.S.G. § 4A1.2(c).

Finally, we address Maswadeh's contention that the District Court erred in ordering an eight level upward departure from the otherwise applicable offense level of 28. In reviewing the District Court's decision to depart, we must determine whether the factors relied on by the Court were appropriate and whether the extent of the departure was reasonable. United States v. Kikumura, 918 F.2d 1084, 1098 (3d Cir. 1990). In other words, in order for the departure to be justified, Maswadeh's crime must fall outside the "heartland" of the typical arson, rendering him culpable in ways not adequately taken into account by the Sentencing Guidelines. See Koon v. United States, 518 U.S. 81, 98 (1996); see also 18 U.S.C. § 3553(b) (requiring a sentence in accordance with the guidelines unless "there exists an aggravating or mitigating circumstance of a kind, or to a degree, not

9

adequately taken into consideration by the Sentencing Commission in formulating the guidelines"). We consider in turn each of the four grounds upon which the District Court justified the four two-level upward departures.

The first ground for departure articulated by the District Court was that the arson involved a "danger to the public that was present to a degree substantially in excess of that which is ordinarily involved in a case of this type." While Maswadeh correctly notes that section 2K1.4(a)(1) of the guidelines already provides for an increase in the base offense level if the arson created a risk of death or bodily harm to non-participants or destroyed a dwelling, we cannot conclude that the District Court erred in concluding that the fire caused by Maswadeh caused an entirely different magnitude of risk to innocent parties "substantially in excess" of the risks caused by an ordinary arson. See U.S.S.G. § 5K2.0. Here, the evidence shows that the fire, started in the middle of the night in a building which contained several residential apartments, and adjacent to buildings which contained several more residential apartments, created a significant risk of injury and death to more than fifty innocent individuals including many small children. Accordingly, we will affirm the two-level upward departure in light of this unconscionable risk caused by Maswadeh.

The second ground for departure articulated by the District Court was the setback to the revitalization efforts in downtown Carlisle caused by the irreparable damage to its downtown historic district. Section 2K1.4(a)(3) of the guidelines only incorporates consideration of the amount of the loss occasioned by arson if the arson did not create a risk of death to innocents or destroy a dwelling. Section 5K2.5, however, expressly

10

authorizes an upward departure where the guidelines do not adequately account for the value of lost property, particularly when the harm was "knowingly risked" and the extent to which "the harm to property is more serious than other harm . . . risked by the conduct relevant to the offense of conviction." U.S.S.G. § 5K2.5. Given the devastation that the fire visited upon downtown Carlisle and the dim prospects for redevelopment of the area, the District Court's two-level departure on this ground was not error. Cf. United States v. Medford, 194 F.3d 419, 425 (3d Cir. 1999) (authorizing upward departure where intangible value of cultural objects stolen from museum was not adequately accounted for by market valuation).

The ground articulated by the District Court for the third two-level upward departure was the fire's destruction of or serious damage to eight downtown businesses, and the resulting loss of jobs, income and tax revenues. We find that this departure correctly takes into account the economic effects on local residents and the local economy not adequately accounted for in the arson guidelines calculation for this extraordinary fire. This recognition of the effect of the fire not only on the historic downtown, but on the financial realities of those who lived and worked there, was an appropriate ground for departure not adequately accounted for by the guidelines.

Finally, the fourth ground articulated by the District Court for a two-level upward departure was the psychological and emotional trauma suffered by the individuals awakened in the middle of the night and rendered homeless by the fire. At sentencing, one of the individuals who lived above the New York Deli and barely escaped with her life testified

that her three children were in fear and suffered emotional problems in the years since the fire, a fire in which the family lost everything, including pets. The Court found that all of the 55 residents displaced by the fire also suffered similar emotional consequences from the fire and their ensuing homelessness. This emotional devastation to a whole community of displaced residents also distinguishes this case from a typical arson and justified the District Court's final two-level upward departure.

## III.

For the foregoing reasons, we find no reversible error in the District Court's rulings before trial, during trial, or at sentencing. Accordingly, we will affirm Maswadeh's conviction and sentence.

 /s/ Maryanne Trump Barry
Circuit Judge