NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 09-4000
_____

UNITED STATES OF AMERICA

v.

DAVID KIRKLAND,
                    Appellant

_____

On Appeal from the District Court
for the District of New Jersey
(D.C. Criminal No. 2-06-cr-00911-001)
District Judge: Honorable Katharine S. Hayden
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
March 3, 2015

Before: AMBRO, SCIRICA, and ROTH, Circuit Judges

(Filed: June 4, 2015)

_____

OPINION[*]
_____

**SCIRICA**, *Circuit Judge*

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

David Kirkland requests we vacate the jury's verdict and grant him a new trial on the basis of alleged trial errors. We will affirm.[1]

## I.

While in prison for a string of burglaries, Kirkland and Terrance Lawton conspired to commit future burglaries. Once released from prison, Kirkland and Lawton carried out their jointly devised scheme. Along with additional coconspirators, they burglarized affluent homes in New Jersey and transported the stolen goods to New York City for purchase by a fence. Lawton was the government's key witness at trial.

Kirkland was charged with one count of conspiring to transport and receive goods in interstate commerce (18 U.S.C. § 371) and three counts of interstate transportation of stolen goods (18 U.S.C. §§ 2314 and 2). Count One, the conspiracy count, related to conduct from March 1999 through November 2006. Counts Two through Four, the substantive counts, charged specific acts of interstate transportation of stolen goods from late 2001 through early 2002. Each count required the value of the stolen goods transported across state lines to be at least $5,000. A jury convicted Kirkland of Counts One, Three, and Four, and acquitted him of Count Two. The trial court denied Kirkland's motion for a new trial and Kirkland appealed.

## II.[2]

---

[1] The District Court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

[2] We review the District Court's denial of Kirkland's motion for a new trial based upon the weight of the evidence for abuse of discretion. *See United States v. Brennan*, 326 F.3d 176, 189 (3d Cir. 2003). Kirkland also asserts "plain error," cumulative error, and ineffective assistance of counsel. We neither find plain error nor will provide a

2

**A.**

Kirkland contends the evidence failed to show he transported at least $5,000 worth of property in interstate commerce. We disagree.[3] The market value of property stolen from a non-merchant is "the price a discriminating consumer would have paid for it," *United States v. Cummings*, 798 F.2d 413, 416 (10th Cir. 1986) (quoting *United States v. Robinson*, 687 F.2d 359, 360 (11th Cir. 1982)), and the owner of property is qualified to testify to its objective market value, *United States v. Laughlin*, 804 F.2d 1336, 1340 (5th Cir. 1986). Here, the property owners established the market value of the transported goods, irrespective of subjective value, exceeded the $5,000 statutory threshold for each count.

On Count Four, the victim testified that a pair of Omega watches, a yellow diamond, and other jewelry, collectively worth "[r]oughly about $30,000," were stolen from her home. In addition, Lawton testified that he and Kirkland transported the property from New Jersey to New York City, where a fence in the Diamond District paid a "penny weight" price—i.e., the value of the metal alone—of $10,000 to $15,000 for the jewelry. Though we are not "bound to accept . . . the amount of money a convicted thief

---

discussion of this unpreserved issue. *See United States v. Irizarry*, 341 F.3d 273, 312 n.23 (3d Cir. 2003). In fact, because we find no error at all, we reject Kirkland's cumulative error argument. Finally, given that Kirkland fails to state in his brief the basis for his ineffective-assistance-of-counsel claim, we will apply our traditional rule that "claims of ineffective assistance of counsel ordinarily are not cognizable on direct appeal." *United States v. Givan*, 320 F.3d 452, 464 (3d Cir. 2003).

   [3] Because the jury's verdict as to Count Three and Count Four was not against the weight of the evidence, we also reject Kirkland's argument that there was "spillover prejudice" as to Count One.

3

is willing to accept to part with his stolen goods" as the market value, *United States v. Simon*, 376 F.3d 806, 809 (8th Cir. 2004), that the fence paid a "penny weight" price and still paid more than $10,000 for the stolen goods is convincing evidence the $5,000 statutory minimum was satisfied.

On Count Three, the victim testified that the stolen items included a Piaget watch, "worth about $30,000," and 170 rings that "[u]sually . . . cost a hundred dollars" each ($17,000). She estimated the total value of the stolen property was $100,000. In addition, Lawton testified that he and Kirkland transported the property from New Jersey to New York, where a fence paid between $2,000 and $6,000. Kirkland contends that a court may select the higher of two estimates of fair market value only if there is evidence with "sufficient indicia of reliability" to support that determination. *United States v. Medford*, 194 F.3d 419, 424 (3d Cir. 1999) (quoting *United States v. Miele*, 989 F.2d 659, 668 (3d Cir. 1993)). But we do not have competing estimates of market value because we are not bound to accept the amount the fence paid as an estimate of market value. *Simon*, 376 F.3d 809. Instead, we have the value given by the victim, which greatly exceeds the $5,000 threshold, and the fence's "penny weight" value range, which encompasses $5,000.

**B.**

**1.**

Citing Federal Rule of Evidence 404(b) and 403, Kirkland challenges the admission of certain evidence. As noted, while Kirkland and Lawton were in prison together for participating in a racketeering enterprise involving stealing property from

4

homes and transporting it across state lines (18 U.S.C. § 1962(c)), they discussed prior

burglaries and planned to commit future burglaries together once released. In particular,

they discussed changing the way they committed burglaries in order to avoid detection by

law enforcement. The court permitted testimony that Kirkland and Lawton had

committed prior burglaries together and that their conversations occurred in prison, but

excluded evidence of the racketeering conviction that put Kirkland there.[4] At the

conclusion of trial, the court instructed the jury that the evidence was only to be used for

a non-propensity purpose.

Federal Rule of Evidence 404(b) is inapplicable because the prison conversations

were intrinsic evidence that was probative of the charged offenses and constituted the

inception of the conspiracy. *See United States v. Green*, 617 F.3d 233, 245 (3d Cir.

2010). In addition, the location of the conversations and the reference to prior burglaries

were admissible for a non-propensity purpose, *see* Fed. R. Evid. 404(b)(2), that is,

establishing Lawton's relationship with Kirkland and demonstrating Lawton's credibility

to testify as to the conspirators' methods and Kirkland's role in the conspiracy. *See*

*United States v. Dansker*, 537 F.2d 40, 58 (3d Cir. 1976); *United States v. Mathis*, 264

F.3d 321, 329 (3d Cir. 2001). Finally, the prior burglaries showed how and why Kirkland

and Lawton developed their modus operandi for their current conspiracy; demonstrated

that they had the skill and knowledge to commit the charged burglaries; and explained

---

[4] "We review a district court's decision to admit or exclude evidence for abuse of discretion, and such discretion is construed especially broadly in the context of Rule 403." *United States v. Mathis*, 264 F.3d 321, 326-27 (3d Cir. 2001).

5

why they were able to lead the conspiracy and recruit others. *See Mathis*, 264 F.3d at 328-29.

Because Lawton's credibility and Kirkland's identity as a coconspirator were critical issues, reference to Kirkland's prior incarceration and burglaries likewise did not violate Rule 403. The District Court balanced the probative value of this evidence against any unfair prejudice and concluded that, though prejudicial, the evidence was not unfairly so because the "context of the conversations . . . [was] intrinsic to the conversations." The court properly charged the jury on the proper purpose of such evidence. 3d Cir. Model Jury Instruction 4.29.[5] Accordingly, we see no abuse of discretion by permitting reference to Kirkland's prior incarceration and prior burglaries.[6] *See United States v. Caldwell*, 760 F.3d 267, 277-78 (3d Cir. 2014).

**2.**

Nor did the court abuse its discretion by admitting Kirkland's federal probation officer's testimony that during the timeframe of the charged conspiracy Kirkland lived in

---

[5] The instruction informed the jury that it could "not consider this evidence as proof that [Kirkland] has a bad character or any propensity to commit crimes." Though Kirkland disputes the timing of this instruction, the court instructed the jury at the beginning of trial to "not form any opinion until all the evidence is in [and] [k]eep an open mind until . . . the end of the case." This instruction was reiterated mid-trial. The court made further efforts to minimize the risk of unfair prejudice by asking prospective jurors whether they would form an impermissible inference from knowledge that Kirkland had been in prison before. Accordingly, we cannot say the court abused its discretion by not giving the instruction *sua sponte* at an earlier time.

[6] The court also did not err by admitting Kirkland's admission under oath of his participation in a burglary charged as an overt act. Kirkland stipulated to the introduction of his state court admission of guilt. In any event, we have also examined the statement and find that its admission did not violate Rule 404(b) or 403 because it was intrinsic evidence of an overt act charged in Count One and it did not unfairly prejudice Kirkland.

New York; was either unemployed or employed at low-wage jobs; used a New Jersey phone number; made certain false or incomplete statements regarding his address; violated his supervised release and was subsequently arrested for probation violation; and failed to report travel to New Jersey, contact with convicted felons, contact with law enforcement, and details about his car ownership. Because other evidence showed Kirkland spent almost $20,000 on rental cars during the same time period, testimony about Kirkland's employment status and alleged homelessness was probative of whether Kirkland was getting this money from burglaries. Testimony that Kirkland was living in New York but traveling to New Jersey was probative of whether he was transporting stolen property across state lines, and testimony of his false statements showed that Kirkland was seeking to avoid supervision, which was necessary for him to continue traveling to New Jersey to commit burglaries. Though the probative value of Kirkland's violation of his supervised release and subsequent arrest was less than that of the other testimony, the evidence demonstrated the extent of Kirkland's evasiveness and its prejudicial effect was minimal because other highly probative evidence had already established Kirkland was violating his probation. Accordingly, we cannot say the probative value of Kirkland's probation violation and resulting arrest was substantially outweighed by the risk of unfair prejudice.[7]

---

[7] We also reject Kirkland's contention that it was unfairly prejudicial for the jury to learn the officer was a probation officer. The District Court engaged in a careful Rule 403 analysis and noted that "[n]obody is hiding the fact that Mr. Kirkland had a previous prison sentence." Lawton had testified to his conversations with Kirkland in jail, and the defense had used Kirkland's prior burglaries, imprisonment, and notoriety in an attempt to show that he was being framed. In addition, the officer's identity as a probation officer explained why he was permitted to monitor Kirkland. Though reporting to a probation

7

## C.

Kirkland contends his indictment was fatally defective.[8] But consistent with our case law, Counts Three and Four "(1) contain[ed] the elements of the offense intended to be charged, (2) sufficiently apprise[d Kirkland] of what he must be prepared to meet, and (3) allow[ed him] to show with accuracy to what extent he may plead a former acquittal or conviction in the event of a subsequent prosecution." *United States v. Kemp*, 500 F.3d 257, 280 (3d Cir. 2007) (citations and internal quotation marks omitted). Counts Three and Four provided specific allegations regarding the "jewelry" Kirkland stole from particular homes, identified by address, town, and date of burglary. In addition, both counts incorporated Count One's allegation that Kirkland and his coconspirators stole "approximately $250,000 in cash" and "in excess of $500,000" in jewelry from the homes. Likewise, Count One was sufficient because it "set forth the agreement and specific intent to commit an unlawful act" and the relevant overt acts. *United States v. Werme*, 939 F.2d 108, 112 (3d Cir. 1991) (citations and internal quotation marks omitted). Count One identified the burglarized homes constituting overt acts by address, town, and date of burglary. Accordingly, we cannot say that the indictment was legally defective.

## D.

---

officer permitted the inference that Kirkland was once convicted of something, this had long been established in a permissible way.

[8] We exercise plenary review over the legal sufficiency of an indictment. *United States v. Yusuf*, 536 F.3d 178, 184 (3d Cir. 2008).

Kirkland contends the government violated his due process rights by using false testimony.[9] But Kirkland must show, among other things, that the false statement went uncorrected and that there is a reasonable likelihood it could have affected the verdict. *United States v. Hoffecker*, 530 F.3d 137, 183 (3d Cir. 2008). He cannot show either. In both cases, the government corrected the misstatement at trial.[10] Moreover, the other evidence of Kirkland's guilt was overwhelming. Accordingly, Kirkland cannot establish a due process violation based on these misstatements.

**E.**

Kirkland contends the District Court committed sentencing errors with regard to role enhancement, amount of loss, number of victims, and calculation of his criminal history. In addition, he claims the court's imposition of a consecutive sentence on Counts Three and Four violates grouping rules and that his sentence was substantively unreasonable. We find these claims meritless.[11]

---

[9] Because Kirkland did not raise this claim at trial or in his post-trial motions, we review it for plain error. *Brennan*, 326 F.3d at 182.

[10] Kirkland identifies two misstatements by government witnesses that allegedly deprived him of due process: Detective Condon's affidavit that Lawton had told Condon that he and Kirkland committed a burglary together on March 17, 1999, and Lawton's testimony that he visited Kirkland at a halfway house in 1999, where they discussed committing future burglaries. Both statements were impossible because Kirkland was in federal prison until 2000, but, as noted, both misstatements were corrected at trial—the first by the government's cross-examination and the second by stipulation.

[11] "We review a district court's sentencing decision for an abuse of discretion." *United States v. Freeman*, 763 F.3d 322, 335 (3d Cir. 2014). Kirkland also claims the District Court abused its discretion by denying his motion for a downward departure, but "we lack jurisdiction to review such a denial unless the District Court was unaware of its discretion to grant the motion." *United States v. King*, 604 F.3d 125, 141 n.9 (3d Cir. 2010). Kirkland does not argue that the court lacked such awareness.

An enhancement for leadership role is proper, as here, where the defendant "was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." U.S.S.G. § 3B1.1(a). All the factors we consider were present here. *See United States v. Hunter*, 52 F.3d 489, 492 (3d Cir. 1995). The evidence established that Kirkland exercised decision-making authority and played a significant role in the commission of the offense; recruited accomplices; claimed a larger share of the profits; engaged in planning and organizing the offense; exercised a high degree of control and authority over others throughout the conspiracy; and involved more than five other individuals in furtherance of the conspiracy.

Second, the court did not abuse its discretion by applying an enhancement for amount of loss and number of victims. Losses caused by coconspirators are attributable to the defendant where they are reasonably foreseeable and in furtherance of the conspiracy, U.S.S.G. § 1B1.3(a)(1)(B); *United States v. Duliga*, 204 F.3d 97, 100 (3d Cir. 2000), as the evidence showed here.[12]

Finally, we affirm a sentence unless "no reasonable sentencing court would have imposed the same sentence on that particular defendant for the reasons the district court provided." *United States v. Tomko*, 562 F.3d 558, 568 (3d Cir. 2009). Finding the Guidelines range did not adequately capture the victims' harm and Kirkland's culpability, the court granted an upward variance of 28 months. The court's explanation for the

---

[12] Kirkland also claims the court's use of judicially found facts to impose enhancements for amount of loss and number of victims violates his Sixth Amendment right to a jury. This claim is meritless because the court did not impose a mandatory minimum. *See Freeman*, 763 F.3d at 335-36.

upward variance demonstrates that it adequately considered the factors in 18 U.S.C. § 3553(a). The court considered the seriousness of the offense, including the harm to victims, and observed that "[i]t's the sheer volume and the sheer perniciousness of this offense that is staggering," and that there "is such a lot of human misery and such a lot of pure greedy theft [and] pure piracy." The court considered that Kirkland had conceived of the conspiracy while incarcerated for burglary and that he emerged from his prior imprisonment "undeterred, unstopped, [and] unstoppable." The court viewed this prior conduct as relevant to the history and characteristics of the defendant, the need for deterrence, and the need to protect the public from the defendant. We thus cannot say the court failed to meaningfully consider the § 3553(a) factors or that its upward variance constituted an abuse of discretion.[13]

### III.

For the foregoing reasons, we will affirm the denial of Kirkland's motion for a new trial and the judgment of conviction and sentence.

---

[13] We also reject Kirkland's other challenges to his sentence. The court properly treated Kirkland's 1997 burglary conviction as criminal history because it was "for conduct not part of the instant offense." U.S.S.G. § 4A1.2(a)(1); *see United States v. Oser*, 107 F.3d 1080, 1089 (3d Cir. 1997). The evidence showed the present conspiracy was conceived after his 1997 conviction, and the present conspiracy involved a different modus operandi from that giving rise to the 1997 conviction. The court also properly made the sentences consecutive because Kirkland's Guidelines range was 151 to 188 months and the count carrying the highest statutory maximum was less than that at 10 years. *See* U.S.S.G. § 5G1.2(d) ("If the sentence imposed on the count carrying the highest statutory maximum is less than the total punishment, then the sentence imposed on one or more of the other counts shall run consecutively . . . .").