UNITED STATES of America, Appellee,

v.

Anthony M. MIELE; John Jay McElfresh; Charles J. Walters; Patrick T. Reinstadtler; James F. Foster, Anthony M. Miele, Appellants.

No. 91–3855.

United States Court of Appeals,
Third Circuit.

Argued July 28, 1992.

Decided March 22, 1993.

Thomas W. Corbett, Jr., U.S. Atty., Michael L. Ivory (argued), Paul J. Brysh, Asst. U.S. Attys., Pittsburgh, PA, for appellee.

Caroline M. Roberto (argued), Pittsburgh, PA, for appellants.

Before: BECKER, MANSMANN, and NYGAARD, Circuit Judges.

## OPINION OF THE COURT

BECKER, Circuit Judge.

In this appeal under the Sentencing Guidelines, the defendant Anthony Miele challenges the district court's attribution of drug quantity, which was the basis under the Guidelines for determining the length of his sentence. In view of the numerous inconsistencies in the record, the fact that the source of most of the critical evidence was an addict-informant with an impaired memory, and the lack of any findings by the district court other than a single conclusory finding as to drug quantity, we find that the record as it now stands does not meet the Guidelines' "sufficient indicia of reliability" standard, see U.S.S.G. § 6A1.3.

We will therefore vacate Miele's sentence and remand for further proceedings (development of the record, more detailed fact finding, *et al.*).

## I. FACTS AND PROCEDURAL HISTORY

### A. *Background*

Miele was indicted for conspiracy to distribute cocaine, in violation of 21 U.S.C. §§ 841(a)(1) & 846.[1] Four co-conspirators were also charged. Miele and the government entered into a plea agreement. In exchange for Miele's assistance in investigating the activities of the co-conspirators and his plea of guilty to the conspiracy charge, the government agreed to move to dismiss the two substantive counts, *see supra* n. 1. The government also agreed to recommend a two-level reduction in Miele's offense level for acceptance of responsibility, pursuant to § 3E1.1 of the Guidelines. Miele was permitted to reserve the right to contest at sentencing the amount of cocaine involved in his conspiracy conviction.

After two days of trial, Miele's co-defendants also pled guilty, and a sentencing hearing for the five defendants was conducted before the same judge. Miele, who was sentenced last, was assigned a base offense level of 32, as recommended by the PSI. The base offense level was derived from the court's finding that Miele was responsible for an amount of cocaine "in excess of five kilos." *See* U.S.S.G. § 2D1.1(c)(6) (Drug Quantity Table). The court, again following the recommendations of the PSI, added a three-level upward adjustment for Miele's role as a manager or supervisor, *see* U.S.S.G. § 3B1.1(b), and a two-level downward adjustment for acceptance of responsibility, *see* U.S.S.G. § 3E1.1(a). In addition, pursuant to the recommendation of the government, the court granted a two-level downward departure for substantial assistance. *See* U.S.S.G. § 5K1.1.

The court thus arrived at an offense level of 31. The applicable Guidelines sen-

tence range for a defendant (such as Miele) in criminal history category I with an offense level of 31 is 108 to 135 months. *See* U.S.S.G. Ch. 5, Pt. A (Sentencing Table). The court sentenced Miele at the low end of the range (108 months).

### B. *Facts Developed (and Disputed) Prior to the Sentencing Hearing*

The PSI provided the following estimate of the total quantity of cocaine for which Miele should be held responsible:

> Based on information provided by the CI [confidential informant] and the defendant, investigators believe the defendant is responsible for distributing approximately eight kilograms of cocaine from late 1984 to early 1990.

The PSI's eight kilogram estimate was derived largely from information provided by the informant Frank Habera, a drug addict at the time of the events in question, who told the probation officer that "during 1985 he observed the defendant to be in possession of at least fifteen pounds [6.8 kilograms] of cocaine."

Miele contested the addict-informant's estimate, advising the probation officer that he had only distributed a total of about three-quarters of a pound of cocaine (.34 kilograms) from late 1984 through 1985, and a total of about 55 ounces (1.5 kilograms) during the entire 1984 to 1990 period. Miele later filed written objections to the PSI, again taking exception to the informant's estimate of 15 pounds (6.8 kilograms), as well as to the PSI's estimate of eight kilograms, and to the recommended base offense level of 32. In his written response, Miele stated that the total amount of cocaine he was involved with during the entire period of the conspiracy was 2.5 kilograms. The Probation Office attached an addendum to the PSI, recording Miele's objections, but reaffirming its original estimate of eight kilograms, with the notation that "the CI [confidential in-

---

**1.** Miele was also charged with possession with intent to distribute cocaine, 21 U.S.C. § 841(a)(1), and use of extortionate means to

collect or attempt to collect an extension of credit, 18 U.S.C. §§ 891 & 894.

formant] will be available to the court at the time of sentencing to testify as to the defendant's involvement in the instant offense."

At the trial of the co-conspirators (prior to their plea agreements), evidence was presented that proved relevant to Miele's sentence. The principal government witness was the informant, Habera. Habera testified about numerous times and places when he saw Miele purchase, sell, and use cocaine during the period between late 1984 and November 1985. For example, Habera testified that he saw Miele in possession of cocaine "almost every day," that he paid over $35,000 to Miele to purchase a total of around 1.5 pounds (.7 kilograms) of cocaine, and that he accompanied Miele on a number of occasions to purchase cocaine from suppliers. However, the specific amounts and details Habera provided were often inconsistent with other portions of his testimony and/or with information provided by Habera before the Grand Jury and to the probation officer. *See infra* Part II.D.

When asked by the prosecutor to "approximate the total amount of cocaine" he had observed in Miele's possession between 1984 and the end of 1985, Habera testified: "It would have to range up in around five or six pounds, at least, maybe more." This estimate, equivalent to between 2.27 and 2.72 kilograms, was widely divergent from Habera's previous estimate of 15 pounds (6.8 kilograms), which had formed the basis for the PSI's eight kilogram estimate.

### C. *The Sentencing Hearing*

At the sentencing hearing, Miele repeated his objections to the information provided by Habera in the PSI, pointing out the inconsistency between Habera's trial estimate of five or six pounds (2.27–2.72 kilograms) and Habera's estimate in the PSI of "at least fifteen pounds" (6.8 kilograms). The government, however, urged the court to adopt the PSI's eight kilogram estimate, stating:

Mr. Habera never wavered in his account of what he saw and the events in which he participated between 1984 and the fall of 1985.... Mr. Habera has stated repeatedly [that] during the one year he was actively involved with Mr. Miele, with regard to cocaine trafficking, he observed 15 to 20 pounds of cocaine in Mr. Miele's possession.

The government told the court it was "comfortable with the amount that is charged in the presentence report in this case, the amount being over five kilos."

With no explanation, the court stated that it "agreed with" the PSI's recommended base offense level of 32 because it found the amount of cocaine for which Miele was responsible to be "in excess of five kilos." [2] Miele now appeals from the judgment of the district court. We have jurisdiction to review the sentence pursuant to 18 U.S.C. § 3742(a).

### II. DISCUSSION

Miele contends that the court's drug quantity finding is not supported by a preponderance of the evidence, and therefore that the district court erred in setting his base offense level at 32 under U.S.S.G. § 2D1.1(c)(6) (Drug Quantity Table). More specifically, Miele argues that the court erred in relying on the drug quantity estimate in the PSI since it was based on an estimate provided by the addict-informant Habera, who later under oath contradicted that estimate. Miele contends that if the court had not relied on the PSI's estimate, but instead had relied on the significantly lower estimates provided by Habera at the co-defendants' trial, those estimates would not support the court's drug quantity finding of more than five kilograms.

Miele also argues that the many contradictions in Habera's testimony and Habera's status as an addict-informant further undermine the reliability of Habera's information. Miele maintains that the court could properly have attributed to him no more than a total of 2.5 kilograms of co-

---

**2.** Initially, the court stated that the amount was in excess of "3.5 kilos," but later corrected itself, stating that it "meant to say five kilos before."

caine, which would yield a base offense level of 28. *See* U.S.S.G. § 2D1.1(c)(8) (Drug Quantity Table). The government responds that the PSI's estimate is reliable, and that even if the court disregarded that estimate, Habera's testimony at the co-defendants' trial supports the court's drug quantity finding.

██ With respect to the court's findings of fact, the government bears the burden of proof by a preponderance of the evidence. *United States v. McDowell*, 888 F.2d 285, 290 (3d Cir.1989).[3] We review these findings to determine whether they are clearly erroneous. *Id.* at 291–92; *see also* 18 U.S.C. § 3742(e).

A. *Reliability of the PSI Estimate*

██ The district court's failure to explain the evidentiary basis for its drug quantity determination leaves us in the difficult position of having to speculate as to the possible grounds for its finding. We begin with the most likely theory: that the court, as is often the case in drug quantity-

based sentencing, adopted the estimate provided in the PSI.[4] We must therefore decide whether the court could properly rely on the PSI's eight kilogram estimate.

██ The Federal Rules of Evidence do not apply in sentencing proceedings. *See* Fed.R.Evid. 1101(d)(3).[5] This does not mean, however, that there is no threshold requirement for admissibility. In *United States v. Baylin*, 696 F.2d 1030, 1040 (3d Cir.1982), a pre-Guidelines case, this court held that, as a matter of due process, facts may be considered a basis for sentencing "only if they have some minimal indicium of reliability beyond mere allegation." With the advent of the Sentencing Guidelines (and the increased importance of fact finding to the sentence determination), the Sentencing Commission recommended a higher evidentiary standard than the *Baylin* standard: Information used as a basis for sentencing under the Guidelines must have "sufficient indicia of reliability to support its probable accuracy," U.S.S.G. § 6A1.3(a).[6] *See also United States v.*

---

3. Miele urges that we apply a clear and convincing standard of proof as we did in *United States v. Kikumura*, 918 F.2d 1084, 1101–02 (3d Cir. 1990). We decline the invitation. While the facts of *Kikumura* do not necessarily define the outer limit of circumstances in which concerns for fairness and reliability in Guidelines sentencing would require the application of a clear and convincing standard, *see generally* Edward R. Becker, Insuring Reliable Fact Finding in Guidelines Sentencing: Must the Guarantees of the Confrontation and Due Process Clauses Be Applied? 22 Cap.U.L.Rev. 1 (1993) (forthcoming), the fact finding in dispute in this case does not approach that boundary.

4. At the beginning of Miele's sentencing hearing, the court stated: "I am not aware of any information that has been withheld from the defendant. I certainly don't have anything other than what appears in the report [the PSI]." The government then urged the court to adopt the PSI's estimate and when the court finally decided on the base offense level of 32, it stated that it "agreed with" the base offense level recommended in the PSI. Thus, it seems most likely that, in spite of Miele's arguments that Habera was an unreliable witness and that the PSI estimate was directly contradicted by Habera's testimony at the co-defendants' trial, the court adopted the PSI's eight kilogram estimate.

5. Commentators have begun to criticize this state of affairs, urging greater evidentiary protection in sentencing hearings in light of the

critical role of district court fact finding under the Guidelines sentencing regime. *See* Margaret A. Berger, Rethinking the Applicability of Evidentiary Rules at Sentencing: Of Relevant Conduct and Hearsay and the Need for an Infield Fly Rule, 5 Fed.Sent.Rep. 96 (1992); Edward R. Becker & Aviva Orenstein, The Federal Rules of Evidence After Sixteen Years—The Effect of "Plain Meaning" Jurisprudence, The Need for an Advisory Committee on the Rules of Evidence, and Suggestions for Selective Revision of the Rules, 60 Geo.Wash.L.Rev. 857, 885–91 (1992); Deborah Young, Untested Evidence: A Weak Foundation For Sentencing, 5 Fed.Sent. Rep. 63 (1992); Note, An Argument for Confrontation Under the Federal Sentencing Guidelines, 105 Harv.L.Rev. 1880 (1992).

6. U.S.S.G. § 6A1.3(a) provides:

§ 6A1.3 *Resolution of Disputed Factors* (Policy Statement)
 (a) When any factor important to the sentencing determination is reasonably in dispute, the parties shall be given an adequate opportunity to present information to the court regarding that factor. In resolving any reasonable dispute concerning a factor important to the sentencing determination, the court may consider relevant information without regard to its admissability under the rules of evidence applicable at trial, *provided that the information has sufficient indicia of reliability to support its probable accuracy.*

*Torres,* 926 F.2d 321, 324 (3d Cir.1991) (citing U.S.S.G. § 6A1.3(a) and noting the necessity that the information upon which Guidelines sentences are based be reliable).

Several other circuits have applied the Commission's "sufficient indicia of reliability" standard to assure fact finding reliability at sentencing. *See, e.g., United States v. Simmons,* 964 F.2d 763 (8th Cir.1992) (vacating defendant's sentence because the drug quantity finding was based on testimony of a drug addict with impaired memory); *United States v. Shacklett,* 921 F.2d 580 (5th Cir.1991) (vacating sentence because district court relied solely on probation officer's conclusory statement as to drug quantity involved); *United States v. Cammisano,* 917 F.2d 1057, 1062 (8th Cir. 1990) (vacating sentence because uncorroborated testimony of FBI agents that defendant was member of organized crime was not sufficiently reliable); *United States v. Robison,* 904 F.2d 365 (6th Cir.1990) (vacating sentence because drug quantity estimates provided by witness who was heavy drug user lacked sufficient indicia of reliability). We think this standard should be applied rigorously.

In this case, the PSI's eight kilogram estimate was derived largely from Habera's statement that he observed Miele in possession of at least 15 pounds (6.8 kilograms) of cocaine in 1985. But, as Miele argued before the sentencing court, Habera later testified at the co-defendants' trial that in 1984 and 1985 he observed Miele in possession of a total of "around five or six pounds [2.27–2.72 kilograms], at least, maybe more." The vast disparity between Habera's estimate in the PSI and the significantly lower estimates he provided at the co-defendants' trial casts doubt on the reliability of the PSI's estimate, particularly in view of Habera's status as an addict informant, *see infra* Part II.D.

The district court did not address the inconsistency between Habera's various estimates, and did not explain why it apparently followed Habera's hearsay estimate in the PSI rather than the lower estimates Habera provided under oath, although some fact finding on this issue would have been most helpful on review. Under these circumstances, we are reluctant to uphold a drug quantity finding based on the higher PSI estimate. *See United States v. Duarte,* 950 F.2d 1255, 1265–66 (7th Cir. 1991) (vacating and remanding drug quantity-based sentence because court relied on one of two contradictory estimates from same witness without addressing the contradiction), *cert. denied,* — U.S. —, 113 S.Ct. 174, 121 L.Ed.2d 120 (1992).

■ We acknowledge that, in a sentencing proceeding, the district court may credit hearsay evidence over sworn testimony, especially where there is other evidence to corroborate the inconsistent hearsay statement. *See United States v. Sciarrino,* 884 F.2d 95 (3d Cir.1989). In *Sciarrino,* we upheld the district court's decision to discredit a co-conspirator's testimony at the sentencing hearing, and to rely instead on the witness's prior inconsistent and hearsay statement, as a basis for the court's drug quantity finding. However, in holding that the hearsay estimate had "sufficient indicia of reliability" to support the court's drug quantity finding, we emphasized that there was ample evidence from other witnesses, including specific drug quantity estimates, that corroborated the co-conspirator's hearsay estimate. *See also United States v. Petty,* 982 F.2d 1365 (9th Cir.1993) (presumptive unreliability of hearsay evidence as to drug quantity was rebutted by other corroborating evidence and therefore had "sufficient indicia or reliability").

(emphasis added). The commentary to § 6A1.3 provides, in pertinent part:

In determining the relevant facts, sentencing judges are not restricted to information that would be admissible at trial. 18 U.S.C. § 3661. Any information may be considered, so long as it has "sufficient indicia of reliability to support its probable accuracy." Reliable hearsay evidence may be considered. Out-of-

court declarations by an unidentified informant may be considered "where there is good cause for the nondisclosure of his identity and there is sufficient corroboration by other means. *United Stated v. Fatico,* 579 F.2d 707, 713 (2d Cir.1978). Unreliable allegations shall not be considered.

(additional citations omitted).

In this case, no other witnesses testified as to specific drug quantities. Miele's former girlfriend, Michele Rubino, testified that Miele used cocaine regularly, that he supplied her with cocaine, and that he had supplied cocaine to his co-conspirators. However, she did not provide any information as to specific drug quantities, and she testified that Miele generally hid his drug distribution activities from her. Thus, as the record now stands, this case is distinguishable from *Sciarrino* due to the lack of other corroborating evidence to support Habera's hearsay estimate. The absence of any findings by the court to explain why it may have chosen to follow Habera's significantly higher hearsay estimate and to discredit his lower estimates at the co-defendants' trial leaves us without confidence that the record was subjected to sufficient review to meet the Guidelines' "sufficient indicia of reliability" standard. *See* U.S.S.G. § 6A1.3.

We also note that under Rule 32(c)(3)(D) of the Federal Rules of Criminal Procedure, if a defendant disputes a fact included in the presentence investigation report, the sentencing court must either resolve that dispute or state that it will not rely on the disputed fact. *See also* U.S.S.G. §§ 6A1.2 & 6A1.3(b); *United States v. Gomez*, 831 F.2d 453, 455 (3d Cir.1987). There is no indication in the record that the district court made any findings to resolve Miele's challenge to the PSI's drug quantity estimate. Nor did the court determine that it would not rely on the PSI's estimate. The court's failure to comply with Rule 32(c)(3)(D) alone is grounds for vacating the sentence and remanding for further proceedings. *See United States v. Furst*, 918 F.2d 400, 408 (3d Cir.1990).

### B. *The Estimates Provided at the Co–Defendants' Trial*

The government argues that even if the PSI's eight kilogram estimate lacks suffi-

cient indicia of reliability, Habera's testimony under oath at the co-defendants' trial supports the sentencing court's finding of more than five kilograms. Habera's estimate under oath of the total amount of cocaine he had observed·in Miele's possession between late 1984 and late 1985 was "five or six pounds [2.27 to 2.72 kilograms], maybe more." The government suggests that the court may have added this estimate to Miele's admission that he possessed a total of 2.5 kilograms to arrive at a total quantity range of 4.77 to 5.22 kilograms. In light of Habera's entire testimony as to Miele's extensive use and distribution of cocaine, the government contends, the district court may properly have relied on the higher end of Habera's trial estimate range to support its finding of more than five kilograms. Assuming that the court relied on Habera's trial testimony rather than the PSI estimate, we are still not satisfied, in the absence of anything more than the district court's conclusory fact finding, that Habera's sworn testimony is sufficient.

█ Miele relies on the holding ·in *United States v. Walton*, 908 F.2d 1289, 1302 (6th Cir.), *cert. denied*, 498 U.S. 990, 111 S.Ct. 532, 112 L.Ed.2d 542 (1990), that "[w]hen choosing between a number of plausible estimates of drug quantity, a court must err on the side of caution." *See also United States v. Sklar*, 920 F.2d 107, 113 (1st Cir.1990) (adopting *Walton*'s "err on side of caution" standard). Under the *Walton* standard, if the district court relied on Habera's trial estimated range and if either end of the range was equally plausible, the court should have adopted the lower end of the estimated range. Habera's lower estimate of 2.27 kilograms, when added to Miele's 2.5 kilogram admission, yields a total drug quantity of *less than* five kilograms.[7]

We do not, however, adopt the *Walton* standard. Where there is other evidence to

---

7. Moreover, we note that adding Habera's trial estimate of the amount of cocaine he observed in Miele's possession in 1985 to Miele's total admission for the entire 1984 to 1989 period may be inaccurate in that there is surely some overlap between those amounts. Although we

do not know the extent of the overlap, it may be significant enough that even the higher range of Habera's trial estimate, when combined with Miele's total admission of 2.5 kilograms, would yield a total of less than five kilograms.

support the higher end of an estimated range, the court may certainly rely on the higher estimate. And we agree with the government that the rest of Habera's testimony, in which he provided information about Miele's extensive dealings in cocaine, might explain the district court's decision to adopt the higher end of his trial estimate. On the other hand, and as we set out in more detail below, *infra* Part II.D, Habera's trial testimony as to drug quantity (other than his total estimate of "five or six pounds") was fraught with inconsistencies.

Moreover, as discussed above, *supra* Part II.A, Habera's estimate to the probation officer of fifteen pounds is widely divergent from the estimated range he provided at trial. In light of the ostensibly unreliable tenor of Habera's testimony, we will not sustain the judgment in the absence of any fact finding to explain why the court may have relied on the higher end of Habera's trial estimate range. In our view, the "sufficient indicia of reliability" standard requires no less. *See* U.S.S.G. § 6A1.3.

### C. Amounts Attributed to the Co–Conspirators

The government offers an additional theory to support the court's drug quantity finding. According to this theory, the district court may have attributed to Miele some or all of the drug quantities attributed to the four co-defendants (who were sentenced immediately prior to Miele), based on the court's finding that Miele was a supervisor or manager of the drug distribution scheme. Again, in the absence of more detailed findings by the district court, we cannot sustain the court's drug quantity finding under this theory.

■ Under the relevant conduct provision of the Guidelines, *see* U.S.S.G. § 1B1.3, the district court may, under certain conditions, attribute to the defendant amounts of drugs possessed, distributed, sold or "handled" by persons other than the defendant. We recently held in *United States v. Collado*, 975 F.2d 985, 992, 995 (3d Cir.1992), that the standard for accomplice attribution under § 1B1.3 is stringent: accomplice attribution is permissible only where facts found by the district court indicate that "drug transactions conducted by the defendant's co-conspirators were within the scope and in furtherance of the activity the defendant agreed to undertake." *Id.* at 995. We emphasized in *Collado*

> that in deciding whether accomplice attribution is appropriate, it is not enough to merely determine that the defendant's criminal activity was substantial. Rather a searching and individualized inquiry into the circumstances surrounding each defendant's involvement in the conspiracy is critical to ensure that the defendant's sentence accurately reflects his or her role.

*Id.*

At Miele's sentencing, the government made no argument and presented no evidence to support a finding that any of the drug quantities attributed to the co-conspirators were within the scope or in furtherance of Miele's agreement. Nor did the district court make any such findings. We therefore conclude that on this record, in the absence of any findings by the district court regarding accomplice attribution, the court's drug quantity finding cannot be supported by reference to the amounts attributed to the co-conspirators.

### D. Reliability of the Addict–Informant's Testimony

■ Finally, Miele questions the reliability of Habera's testimony because there is no indication in the record that the court subjected the drug quantity information provided by Habera to any special scrutiny in light of Habera's status as an addict-informant. In our view, without such scrutiny, Habera's drug quantity information lacks the indicia of reliability required by the Guidelines.

■ We have long followed the general rule that juries in criminal cases should be specially instructed to receive the testimony of an addict-informant witness with caution and to scrutinize it with care. *See Virgin Islands v. Hendricks*, 476 F.2d 776, 779–80 (3d Cir.1973); *United States v. Kinnard*, 465 F.2d 566, 570–71 (D.C.Cir.1972).

We see no reason why this rule should not also be applicable in sentencing.

At the co-defendants' trial, Habera testified at length about his extensive and increasing abuse of cocaine during the period of time at issue.[8] The tenor of his entire testimony, which was laden with imprecision and inconsistency, bore this out. For example, Habera testified at one point that he had seen a maximum of one kilo in Miele's possession at any one time during 1984 and 1985, but he later stated: "Like I said, I only could theorize just by the size of it. I have seen kilos [2.2 pounds] at [Miele's] house, or over a pound. It was big." At another point during cross-examination, Habera admitted that although he had just testified that he accompanied Miele *three* times to a certain house in Carnegie, Pennsylvania, where Miele would pick up cocaine, he had testified before the Grand Jury that he had gone there *six* times. Moreover, a report of an interview he had given in May, 1989 stated that Habera had accompanied Miele on at least *twelve* occasions to Carnegie, Pennsylvania. Habera had also previously told investigators that the house was in Oakland, a section of Pittsburgh, rather than Carnegie. He explained his mistake: "I said Oakland, but it was Carnegie.[9] I wasn't exactly sure at the time we were reviewing and getting all the information together."

Habera's estimates as to the quantity of cocaine he had observed in Miele's possession during any of those visits to Carnegie ranged from one kilogram (2.2 pounds), as stated in the report of the 1989 interview, to "a pound, maybe a little over ... I can only theorize by looking at the quantity," stated on cross-examination, to "anywhere from an ounce to a quarter pound. I have seen up to a half a pound," stated before the Grand Jury. Further, the considerable discrepancy between Habera's estimate of fifteen pounds (6.8 kilograms) in the PSI and his total estimate of "five or six pounds" (2.27 to 2.72 kilograms) at the co-

conspirators' trial casts doubt on his credibility as a source of specific drug quantities.

As we have pointed out, other courts of appeals have vacated and remanded drug quantity-based sentences after finding that addict-informant testimony relied on for sentencing lacked the sufficient indicia of reliability required by § 6A1.3(a) of the Guidelines. Recently, in *United States v. Simmons*, 964 F.2d 763 (8th Cir.1992), the Eighth Circuit vacated and remanded a drug quantity-based sentence because the court found that it may have been based on the testimony of an addict-informant who apparently lied under oath and whose testimony was "marred by memory impairment from a history of cocaine addiction." *Id.* at 776. Similarly, in *United States v. Robison*, 904 F.2d 365 (6th Cir.1990), the Court of Appeals for the Sixth Circuit held that a sentencing court's drug quantity finding was clearly erroneous because it was based on the estimate of an addict-witness who admitted on cross-examination that she was a heavy drug user during the time period at issue, that her memory was therefore "hazy" regarding that time, and that in her testimony she was guessing at amounts. *Id.* at 371–72.

■ Because of the questionable reliability of an addict-informant, we think it is crucial that a district court receive with caution and scrutinize with care drug quantity or other precise information provided by such a witness before basing a sentencing determination on that information. In spite of Habera's history of addiction and the vagueness and inconsistency of his trial testimony, the district court made no findings regarding Habera's credibility as a witness or the reliability of any of Habera's various drug quantity estimates.

In sum, although we do not preclude the district court on remand from relying on Habera's testimony, we hold that in light of his status as an addict-informant, the court should receive his testimony with caution

---

**8.** Habera testified that during a six-month period in 1985 (the period during which he observed Miele's drug use and distribution), Habera used close to a pound and a half of cocaine. During the end of the period, he was using "at least an eighth ounce a day." Habera testified that he lost his job during that period due to his drug abuse.

**9.** Carnegie, which is not a section of Pittsburgh, is some ten miles from Oakland.

and scrutinize it with care in determining whether it meets the "sufficient indicia of reliability" standard.

### E. Conclusion

Prior to the enactment of the Sentencing Reform Act, 18 U.S.C. §§ 3551–3586, 28 U.S.C. §§ 991–998, and the promulgation of the Guidelines, federal district courts had unfettered discretion to sentence a defendant anywhere within the range of penalties set by Congress. Under the Guidelines regime, however, sentencing determinations are driven by the facts found at sentencing that relate to the defendant's conduct and background. These facts are translated through the provisions of the Guidelines into a presumptive sentencing range. Thus, under the Guidelines, the reliability of the evidentiary basis for facts found at sentencing is of the utmost importance.

■ In this case, Miele's involvement with cocaine was extensive and continued over a long period of time.[10] However, a determination that Miele's drug activity was substantial does not translate readily into a specific drug quantity finding, which is the ultimate issue for sentencing purposes. As we have explained in detail above, the record here leaves us with serious questions as to the reliability of the information provided by the government's key witness. Accordingly, we require that the district court articulate more than a conclusory finding (that there must have

been more than five kilograms). The district court may not rest its decision upon facts until it determines that the fact or facts have sufficient indicia of reliability to support a conclusion that they are probably accurate. U.S.S.G. § 6A1.3. We will therefore vacate the sentence and remand for further fact finding and resentencing consistent with this opinion.[11]

---

10. Habera testified that he witnessed Miele buy and sell cocaine from a number of persons on a number of occasions, that Miele sold cocaine while on duty as a security officer, that Miele used and distributed cocaine from the security officer's desk in the judge's chambers in the Westmoreland County Courthouse, that Habera himself purchased a total of about one and a half pounds of cocaine from Miele, and that Miele possessed cocaine "almost every day." Miele's former girlfriend, Michele Rubino, also testified that Miele used cocaine regularly.

11. Miele also challenges the district court's decision to depart downward by two levels under Guidelines § 5K1.1, which authorizes downward departure upon the government's motion for "substantial assistance in the investigation or prosecution of another person who has committed an offense." Miele contends that the district court erroneously believed that its dis-

cretion to depart was curtailed because the defendant was a police officer during the time of his criminal conduct. We disagree. As we read the record, it does not suggest that the district court believed that its authority to depart downward under § 5K1.1 was limited because of Miele's position as a police officer.

This court does not have jurisdiction over an appeal of a district court's exercise of discretion whether, or by how much, to grant a downward departure. See United States v. Denardi, 892 F.2d 269 (3d Cir.1989). In United States v. Parker, 902 F.2d 221, 222 (3d Cir.1990), we specifically held that the circumstances in which a defendant may appeal a sentence, as set forth in 18 U.S.C. § 3742(a), "do not include situations in which a defendant is seeking an enhanced downward departure." Accordingly, we will dismiss Miele's appeal of the district court's § 5K1.1 two-level downward departure.