

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-27-2006

# USA v. Scott

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-1604

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"USA v. Scott" (2006). 2006 Decisions. Paper 1207.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/1207

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 05-1604

UNITED STATES OF AMERICA

v.

ROBERT T. SCOTT,

Appellant

Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Criminal Action No. 04-cr-00024)
District Judge: Honorable Sylvia H. Rambo

Submitted Under Third Circuit LAR 34.1(a)
March 7, 2006

Before: RENDELL and AMBRO, Circuit Judges,
and SHAPIRO,[*] District Judge

(Opinion filed   April 27, 2006 )

OPINION

AMBRO, Circuit Judge

---

[*]Honorable Norma L. Shapiro, Senior District Judge for the Eastern District of
Pennsylvania, sitting by designation.

On August 10, 2004, Robert T. Scott pled guilty to one count of distribution of cocaine and crack cocaine in violation of 21 U.S.C. § 841(a)(1). The District Court sentenced Scott to 108 months imprisonment to be followed by three years of supervised release. Scott filed a timely appeal from the final judgment of his sentence. For the reasons provided below, we affirm.

## I.

As we write only for the parties, who are familiar with the underlying facts, we set out only those facts necessary to our analysis. As noted above, Scott pled guilty to distribution of cocaine and crack cocaine and a presentence report was prepared. Premised on its finding that Smith was responsible for the distribution of 36 kilograms of cocaine and 1,163 grams of crack cocaine (*i.e.*, 30,460 kilograms of marijuana equivalent),[1] the presentence report determined that his base offense level was 38. It further recommended a two-level downward adjustment under U.S.S.G. § 5C1.2(a), bringing Scott's total offense level to 36, which, when combined with his criminal history category, resulted in an advisory Guidelines range of 188 to 235 months imprisonment.

Scott objected to the presentence report's drug quantity calculation, arguing that,

---

[1] The evidence that the presentence report relied on to establish drug quantity included: sworn grand jury testimony regarding drug transactions involving Scott and co-defendant, Sylburn Wallace, provided by a confidential informant; sales of drugs involving Scott and Wallace to undercover officers; and purported admissions regarding drug quantities by Scott to law enforcement officers subsequent to his arrest.

due to the *Blakely* waiver in his plea agreement,[2] the Government needed to prove the drug quantity amounts at sentencing beyond a reasonable doubt. Scott also noted that, at the time of his guilty plea, the District Court indicated that it did not expect hearsay evidence from the Government concerning the drug quantities involved in the offense conduct. In its orders scheduling the sentencing hearing, the District Court directed that no hearsay would be admitted. The Government filed a motion for reconsideration of that directive, contending that the use of hearsay at sentencing to establish drug quantity is permissible so long as the hearsay is not inherently unreliable under 18 U.S.C. § 3661, U.S.S.G. § 6A1.3, and Third Circuit caselaw. At the February 23, 2005 sentencing hearing, the Court ruled that the only hearsay evidence it would entertain was the sworn grand jury testimony of the confidential informant.

The District Court's limitation on the Government's evidence at sentencing resulted in a reduction of the drug quantity finding from 30,460 kilograms to 25,340 kilograms of marijuana equivalent and, thus, a reduction of Scott's base offense level from 38 to 36. The Court also applied a two-level downward adjustment under §

---

[2]In his *Blakely* jury trial waiver, Scott crossed out the words "by a preponderance of the evidence" and "including hearsay" from the following sentence: "I further agree that any legal and factual issues relating to the application of the Federal Sentencing Guidelines to my conduct, including any fact that supports a specific offense characteristic or other enhancement or adjustment and the appropriate sentence within the statutory maximums provided for by law, will be determined by the court by a preponderance of the evidence at a sentencing hearing; the Federal Rules of Evidence, other than with respect to privileges, shall not apply under Fed. R. Evid. 1101(d)(3), and the court may consider any reliable evidence, including hearsay."

5C1.2(a) (safety valve) and a three-level downward adjustment under § 3E1.1 (acceptance of responsibility), bringing the total offense level to 31. That offense level, combined with Scott's criminal history category of I, resulted in an advisory Guidelines range of 108 to 135 months. The District Court sentenced Scott at the bottom of that range to 108 months incarceration. This appeal followed.

## II.

Scott contends that he is entitled to re-sentencing because the District Court failed to apply the beyond a reasonable doubt standard at his sentencing hearing. Specifically, he maintains that, because his is a "transition case" (*i.e.*, a case in which the guilty plea was entered before–but sentencing occurred after–the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005)), the *Booker* remedy of an advisory Guidelines scheme was unforeseeable when he pled guilty and, therefore, it cannot be applied to him without violating his due process rights or the Ex Post Facto Clause of the Constitution. This contention, however, is foreclosed by a recent decision, also involving a "transition case," in which we held that "[a]s before *Booker*, the standard of proof under the guidelines for sentencing facts continues to be preponderance of the evidence." *United States v. Cooper*, No. 05-1447, —F.3d—, 2006 WL 330324, at *4 (3d Cir. Feb. 14, 2006). Moreover, *Booker* itself expressly states that its holdings, including its remedial holding, apply to all cases on direct review. 543 U.S. at 268. Thus, it was not an infringement of Scott's due process rights or a violation of the Ex Post Facto Clause for

4

the District Court to impose a sentence based on facts found by a preponderance of the evidence.

Scott next claims that the District Court erred by relying on the Government's hearsay evidence in its calculation of the quantity of drugs involved for sentencing purposes. "The use of hearsay in making findings for purposes of Guidelines sentencing violates neither the Sentencing Reform Act . . . nor the Due Process Clause." *United States v. Brothers*, 75 F.3d 845, 848 (3d Cir. 1996) (citing *United States v. Sciarrino*, 884 F.2d 95, 98 (3d Cir. 1989)). "The sentencing court can give a high level of credence to hearsay statements, going so far as to 'credit hearsay evidence over sworn testimony, especially where there is other evidence to corroborate the inconsistent hearsay statement." *Id*. (quoting *United States v. Miele*, 989 F.2d 659, 664 (3d Cir. 1993)). "[T]o avoid "misinformation of constitutional magnitude," however, "we require that information used as a basis for sentencing under the Guidelines . . . have 'sufficient indicia of reliability to support its probable accuracy.'" *Id*. (quotations and citations omitted). According to the Sentencing Guidelines,

> [i]n resolving any reasonable dispute concerning a factor important to the sentencing determination, the court may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy.

U.S.S.G. § 6A1.3(a). The commentary to § 6A1.3 further provides:

> In determining the relevant facts, sentencing judges are not restricted to information that would be admissible at trial. 18 U.S.C. § 3661. Any

5

information may be considered, so long as it has "sufficient indicia of reliability to support its probable accuracy." Reliable hearsay evidence may be considered. Out-of-court declarations by an unidentified informant may be considered "where there is good cause for the nondisclosure of his identity and there is sufficient corroboration by other means."

U.S.S.G. § 6A1.3(a), Commentary. Our Court has held that "this standard [sufficient indicia of reliability] should be applied rigorously." *Miele*, 989 F.2d at 664.

The Government's stated good cause for the nondisclosure of the confidential informant's identity was "[t]he ability to protect the identity of the [confidential informant] in as many cases as possible," as that is a "valuable asset and one that encourages individuals to assist the United States." *See United States v. Johnson*, 302 F.3d 139, 148-49 (3d Cir. 2002) (stating that, in order to encourage citizens to report criminal activity, the Government has a privilege to withhold from disclosure the identity of persons who fail to furnish information regarding illegal activity), *cert. denied*, 537 U.S. 1140 (2003). Scott neither effectively contests the Government's stated good cause nor argues that disclosure of the confidential informant's identity was either "relevant and helpful to [his] defense" or "essential to a fair determination of [his] guilt." *Id*. at 149 (internal quotations omitted).

Scott's primary basis for requiring in-person testimony of the informant was that in his *Blakely* jury trial waiver he had crossed out the words "including hearsay" from "the Federal Rules of Evidence, other than with respect to privileges, shall not apply under Fed. R. Evid. 1101(d)(3), and the court may consider any reliable evidence, including

6

hearsay." This certainly amounts to a reservation by Scott of a right to challenge the admissibility of any hearsay at sentencing post-*Blakely*. Any basis there may have been in *Blakely* for holding hearsay inadmissible at sentencing, however, was negated by *Booker*'s remedial holding. This is because the Court remedied the Guidelines by excising two provisions of the Sentencing Reform Act that made them mandatory, 543 U.S. at 245-46, but did not strike down 18 U.S.C. § 3661, *see id*. at (stating that, "with [18 U.S.C. §§ 3553(b)(1) and 3742(e)] excised [,] . . . the remainder of the Act satisfies the Court's constitutional requirements"). This, as demonstrated above, allows district courts to base sentencing determinations on reliable hearsay. In fact, Justice Scalia's dissent in *Booker* indicates that the majority's holding did not alter a sentencing court's ability to rely on hearsay to make sentencing determinations. *Id*. at 304 (Scalia, J., dissenting in part) ("Inexplicably, however, the [majority] opinion concludes that the manner of achieving uniform sentences was more important to Congress than actually achieving uniformity-that Congress was so attached to having judges determine 'real conduct' on the basis of bureaucratically prepared, hearsay-riddled presentence reports that it would rather lose the binding nature of the Guidelines than adhere to the old-fashioned process of having juries find the facts that expose a defendant to increased prison time."). Therefore, we must reject Scott's argument that the District Court erred in considering reliable hearsay at sentencing to resolve the factual dispute concerning the quantities of drugs involved in his crimes.

Scott's final argument is that his sentence was unreasonable under *Booker*. He asserts that (1) the District Court relied on hearsay evidence to determine his drug quantity amount and (2) the Guidelines' imposition of more severe sentences on those prosecuted for distribution or possession with intent to distribute crack cocaine than on those prosecuted for similar crimes involving cocaine powder "results in sentences that are unjust," and, thus, is *per se* unreasonable. The Government's response is unhelpful. It first argues that we lack jurisdiction to review a sentence, such as Scott's, that is within the applicable Guidelines range. We recently rejected that argument in *United States v. Cooper*, where we made clear that an unreasonable sentence is "imposed in violation of law," so that we have jurisdiction under § 3742(a)(1) regardless where the sentence falls in relation to the Guidelines range. 2006 WL 330324, at *5-7. The Government then maintains that a sentence within or below the applicable Guidelines range is *per se* reasonable. *Cooper* forecloses that argument as well. Although "a within-[G]uidelines range sentence is more likely to be reasonable than one that lies outside," a sentence within the Guidelines range is not *per se* reasonable. *Id*. at *20-21. Instead, the appellant bears the burden of establishing the unreasonableness of the sentence. *Id*.

We require that the District Court give "meaningful consideration" to the factors enumerated in 18 U.S.C. § 3553(a), *id*. at *11, and to any sentencing grounds "properly raised by the parties which have recognized legal merit and factual support in the record," *id*. at *21. The Court does not need to recite these factors or make specific findings with

8

respect to each as long as the record makes clear that it took them into account. *Id*. at *12. Moreover, we apply a deferential standard of review to the Court's application of the factors to the facts of the case. *Id*. at *15.

Examining the District Court's findings, there is little question the sentence it imposed was reasonable. The District Court considered the Guidelines range, its discretion to depart from that range in fashioning a sentence, the role of § 3553 in directing its exercise of that discretion, and the goals to be served by the choice of sentence. For the reasons outlined above, the District Court's examination of hearsay evidence does not amount to unreasonableness; indeed, it is specifically authorized by the Sentencing Reform Act and the Guidelines.

Scott's sole remaining contention is that the Guidelines' crack cocaine/powder cocaine disparity is so disproportionate it "cannot be justified," and therefore, his 108-month sentence is unreasonable under *Booker*. To bolster his argument, he points to the "1997 Statement on Powder and Crack Cocaine to the Senate and House Judiciary Committes," in which several federal judges, each of whom was a former United States Attorney, argue that the "disparity between powder cocaine and crack cocaine . . . results in sentences that are unjust and do not serve society's interests." The question before us, however, is not whether a sentencing court may use the disparity as a reason to impose a shorter sentence than the one recommended by the Guidelines after *Booker*, but rather whether it is error for the District Court not to have taken the disparity into account.

Because we have routinely upheld the disparity against constitutional attack, including equal protection claims, *see, e.g.*, *United States v. Frazier*, 981 F.2d 92, 96 (3d Cir. 1992) (holding that distinctions between crack cocaine and cocaine powder for sentencing purposes do not constitute an equal protection violation and that the 100:1 ratio does not constitute cruel and unusual punishment); *United States v. Jones*, 979 F.2d 317, 320 (3d Cir. 1992), *superseded by statute on other grounds* (holding Guidelines provisions imposing higher offense levels for offenses involving crack cocaine not to be unconstitutionally vague), "it would be inconsistent to *require* the [D]istrict [C]ourt to give a nonguideline sentence based on the [disparity]." *United States v. Gipson*, 425 F.3d 335, 337 (7th Cir. 2005) (emphasis in original).

\* \* \* \* \*

In this context, we affirm Scott's sentence.