NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-2531
_____

UNITED STATES OF AMERICA

v.

AKI JONES;
a/k/a Akeem Jones
a/k/a Aki D. Jones

AKI JONES,
              Appellant
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 11-cr-00558)
District Judge:  Honorable Gene E. K. Pratter
_____

Submitted Under Third Circuit LAR 34.1(a)
February 14, 2013

Before:  HARDIMAN and GARTH, *Circuit Judges.*
and STARK[*], *District Judge*

(Filed: February 20, 2013)
_____

OPINION OF THE COURT
_____

---

[*] The Honorable Leonard P. Stark, District Judge for the District of Delaware sitting
by designation.

HARDIMAN, *Circuit Judge*.

Aki Jones appeals the District Court's judgment of sentence. He contends that hearsay evidence introduced at his sentencing hearing did not have sufficient indicia of reliability to be considered by the District Court. We will affirm.

I

On November 22, 2010, a street fight involving a large group of teenagers took place at the intersection of 24th and Turner Streets in Philadelphia. One of the young women fighting was Jones's goddaughter. As the fight unfolded, Jones approached the melee and fired a handgun into the air to disperse the crowd. He then placed the gun into a car parked nearby and began walking away from the area. The police arrived at the scene shortly thereafter and were told by a bystander that Jones had fired a gun. The police apprehended Jones and recovered the gun. On December 5, 2011, Jones pleaded guilty to possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1).

Jones's pre-sentence investigation report calculated his advisory United States Sentencing Guidelines (USSG) range as 46–57 months' imprisonment, based on a total offense level of 21[1] and a criminal history category of III. Prior to sentencing, the

---

[1] Jones's base offense level was 20 pursuant to USSG § 2K2.1. He received a four-level enhancement for firing a firearm in connection with another felony offense pursuant to USSG § 2K2.1(b)(6)(B). Jones received a three-level reduction for acceptance of responsibility pursuant to USSG § 3E1.1.

Government moved for an upward departure from the Guidelines range, arguing that Jones's criminal history category underrepresented the seriousness of his criminal past. In the alternative, the Government argued that an upward variance was warranted in light of Jones's history of gun-related crimes. The Government's motion focused on two incidents that had not led to convictions: Jones's alleged shooting of a referee during a basketball game in July 2008; and his arrest for gun possession in September 2009.

At Jones's sentencing hearing, the Government presented one witness, former Philadelphia Police Department Detective James Rago, who testified about his investigation of the July 2008 shooting. Rago's investigation concluded that Jones had shot a basketball referee in the leg and buttocks area because he disagreed with the referee's foul calls in a summer league basketball game. During the investigation, Rago interviewed the injured referee, Benjamin Wright. Although Wright could not identify the shooter because he was shot from behind, Wright reported that Jones had played in a basketball game refereed by Wright earlier in the evening. During the game, Jones had argued with Wright about several calls. Jones told Wright that if he did not change how he refereed the game, "I'll foul you." Wright referred Rago to his nephew, whom he said was on the basketball court and could identify the shooter.

Rago interviewed the victim's nephew twice. During the first interview, the nephew told Rago that he heard a gunshot and then saw Jones, with a gun in his hand,

standing over his injured uncle. The nephew immediately identified the shooter as Jones, whom he had seen around the neighborhood almost every day for the month and a half prior to the shooting. The nephew signed a photograph of Jones, identifying him as the shooter. At the second interview, the nephew signed a statement prepared by Rago from his notes of the first meeting. Rago also interviewed three other witnesses to the shooting who told him that the shooter's first name was "Aki." Based on these interviews, Rago submitted an affidavit of probable cause for Jones's arrest.

While testifying at Jones's sentencing hearing, Rago could not remember the nephew's name or the names of the witnesses who provided the shooter's first name. Rago had retired from the Philadelphia police and the files of his investigation—which contained the report of his interviews and the nephew's statement and signed photograph—had been lost after his retirement. Defense counsel cross-examined Rago about the absence of police paperwork and his inability to remember the names of witnesses who had identified Jones.[2] After evaluating this evidence, the District Court found by a preponderance of the evidence that Jones had shot the basketball referee. However, the District Court denied the motion for an upward departure, finding that the

---

[2] Prior to cross-examining Rago, defense counsel objected to his direct testimony and asked that it be stricken from the record because the Government did not provide defense counsel with the record of Rago's investigation. The Government maintained that it had turned over everything it possessed—the affidavit of probable cause, a police radio report, and a processing ticket. The District Court offered to postpone the hearing to allow defense counsel to prepare more fully for cross-examination, but, after consulting with Jones, defense counsel requested that the hearing proceed.

issues raised by the Government lent themselves more to the Court's discretion in the context of a variance.[3]

After detailed consideration of the sentencing factors enumerated in 18 U.S.C. § 3553(a), during which the District Court repeatedly noted Jones's history of gun-related violence, some of which he committed around children, the Court granted an upward variance of three months and sentenced Jones to 60 months' imprisonment to be followed by three years of supervised release. This appeal followed.

## II[4]

Jones argues that Rago's testimony was hearsay evidence that lacked sufficient indicia of reliability to support its probable accuracy, as required by USSG § 6A1.3(a). We review this factual question for clear error. *See United States v. Givan*, 320 F.3d 452, 463 (3d Cir. 2003); *United States v. Miele*, 989 F.2d 659, 663 (3d Cir. 1993).

The Federal Rules of Evidence do not apply in sentencing proceedings. Fed. R. Evid. 1101(d)(3). Instead, "[i]nformation used as a basis for sentencing under the Guidelines must have 'sufficient indicia of reliability to support its probable accuracy.'" *Miele*, 989 F.2d at 663 (quoting USSG § 6A1.3(a)). Under this lower threshold for

---

[3] The Government briefly presented evidence regarding the pending September 2009 gun possession charge. However, the District Court declined to consider it in light of Jones's upcoming trial on those charges.

[4] The District Court exercised jurisdiction pursuant to 18 U.S.C. § 3231. Our jurisdiction lies under 18 U.S.C. § 3742 and 28 U.S.C. § 1291.

admissibility, evidence that would normally be excluded at trial—such as hearsay—may be considered during sentencing. *See* USSG § 6A1.3(a) ("[T]he court may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy."); *see also* 18 U.S.C. § 3661 ("No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence."); *United States v. Watts*, 519 U.S. 148, 151–52 (1997); *United States v. Grier*, 475 F.3d 556, 570 n.9 (3d Cir. 2007) (en banc). "'Indicia of reliability' may come from, *inter alia*, the provision of facts and details, corroboration by or consistency with other evidence, or the opportunity for cross-examination." *United States v. Smith*, 674 F.3d 722, 732 (7th Cir. 2012) (internal citations omitted).

Here, Rago's testimony had sufficient indicia of reliability for the District Court to rely upon it. Rago spoke to multiple witnesses in the course of his investigation, several of whom independently reported that the shooter had an unusual first name, "Aki." He twice discussed the incident with the victim's nephew, who signed a statement and a photograph identifying Jones as the shooter. This information was recorded in Rago's affidavit of probable cause, which was filed a mere nine days after the shooting occurred. Rago's testimony during the sentencing hearing was highly detailed, completely

6

consistent with the affidavit's recent account of the investigation, and subjected to cross-examination by defense counsel.

Rago's cohesive and consistent account stands in stark contrast to the cases in which we have found hearsay evidence so unreliable as to preclude admission under the liberal standards governing sentencing proceedings. In *United States v. Miele*, we found that an informant's hearsay statement regarding the quantity of drugs involved in a conspiracy was unreliable because the informant had made vastly inconsistent statements in the trial of a co-conspirator. 989 F.2d at 664. We also noted that there was no evidence that corroborated the drug quantity estimate credited by the district court. *Id.* In *United States v. Brothers*, we similarly found hearsay evidence unreliable because of inconsistent statements and a lack of corroboration with the statement credited by the district court. 75 F.3d 845, 849–53 (3d Cir. 1996). In contrast to the statements at issue in *Miele* and *Brothers*, Rago never gave inconsistent statements; his testimony was not only internally consistent, but also consistent with and corroborated by the contemporaneous affidavit of probable cause. *See United States v. Leekins*, 493 F.3d 143, 151 (3d Cir. 2007) (police reports containing transcribed interviews were sufficiently reliable in part because of their "detail and internal consistency").

Jones relies on *United States v. Cammisano*, 917 F.2d 1057 (8th Cir. 1990), a case that is easily distinguished. There, the defendant challenged the reliability of FBI agents' hearsay testimony that he was involved in organized crime. *Id.* at 1061–62. The Eighth

Circuit noted that the agents' testimony was "hearsay upon hearsay upon hearsay," *id.* at 1062, because the agents learned the information from informants who in turn had received it from other sources, *see id.* at 1061. Given the distance between the agents and the source of the information, the court deemed the testimony unreliable. *Id.* at 1062. In this case, by contrast, Rago spoke directly to the eyewitnesses, each of whom told Rago the shooter's first name was "Aki," and had the nephew sign a sworn statement and photograph identifying Jones, whom he had seen frequently in the neighborhood, as the shooter.

Jones makes several other arguments as to why Rago's testimony was unreliable. He notes that the testimony contained hearsay statements from witnesses whose names Rago could not remember. He also observes that Rago testified about events occurring nearly four years before his court appearance, and that Rago, the Government, and the defense were unable to review the entire investigation file because it had been lost by the Philadelphia Police Department. These arguments certainly go to the weight of the evidence, but we cannot say that the District Court committed clear error by crediting Rago's testimony despite the flaws that Jones points out. The standard is whether the evidence has "sufficient indicia of reliability"—a liberal standard that was satisfied in this case.

### III

For the reasons stated, we will affirm the District Court's judgment of sentence.