**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 18-2530
_____

UNITED STATES OF AMERICA

v.

KEVANTE WASHINGTON,

Appellant
_____

Appeal from the United States District Court
for the District of Delaware
(D.C. No. 1-16-cr-00073-002)
District Judge: Hon. Leonard P. Stark
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
March 18, 2019
_____

Before: SHWARTZ, KRAUSE, and BIBAS, Circuit Judges.

(Filed: March 22, 2019)

_____

OPINION[*]
_____

SHWARTZ, Circuit Judge.

---

[*] This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

Defendant Kevante Washington appeals his sentence for conspiracy to distribute heroin. Because the District Court's factual findings concerning the drug quantity attributed to Washington and the imposition of the firearms enhancement were correct, and Washington's sentence was substantively reasonable, we will affirm.

I

Washington pled guilty to conspiracy to distribute heroin (Count I) and illegal possession of a firearm by a convicted felon (Count II). At sentencing, Corporal Gregory Smith, the supervisor of the Cecil County Drug Task Force, described the investigation that led to Washington's conviction. Between June 16, 2016 and July 14, 2016, law enforcement monitored Washington and his co-conspirators through wiretaps, video, and in-person surveillance, and collected evidence about twelve drug transactions. Intercepted phone conversations discussing seven of the twelve transactions revealed specific drug amounts that ranged between 25 and 60 "logs"[1] of heroin per transaction.[2] During the final transaction on July 14, 2016, agents recovered 50 logs from one of

---

[1] Each log contained 130 individual bags of heroin. The parties stipulated that each bag weighed .008 grams, making each log 1.04 grams.

[2] According to Corporal Smith's testimony, investigators recorded calls planning transactions on June 16, 19, 23, 24, 27, 29, and 30, six of which involved heroin deliveries ranging from 25 logs (26 grams) to 50 logs (52 grams), and one which involved 600 logs (624 grams). The District Court found that the 600 log delivery was an outlier and held, given the defendant's "course of dealing," a preponderance of the evidence supported a sale of 60 logs on June 27, 2016, rather than 600 logs. App. 251. The District Court also excluded the June 29 transaction amount of 25 logs (26 grams) from its total amount calculation because it involved heroin left over from an earlier recorded transaction. Together with the fifty logs recovered on July 14, 2016 (which actually totaled 60 grams), these transactions totaled approximately 356 grams of heroin.

2

Washington's co-conspirators and $10,000 from Washington's car.

For four of the transactions, conducted on July 2, 4, 7, and 11, 2016, the Government lacked recordings disclosing the specific amounts of heroin involved. Investigators, however, recorded calls in which the conspirators coordinated meetings for these four transactions at the same location as previous ones, video surveillance captured one transaction, and investigators observed a pattern of behavior—including Washington or co-conspirators carrying a bag between vehicles—in all four transactions that was consistent with transactions observed throughout the investigation.

Corporal Smith estimated that a minimum of 25 logs of heroin would have changed hands at each of these four transactions. He based this estimate on: (1) the fact that none of the previous transactions involved less than 25 logs; (2) the volume of heroin that Washington's co-conspirator and sub-distributor was selling on a daily basis, which was "on a bad day, between 10 and 20 logs[,]" App. 163; and (3) the inconvenient and risky three-hour round trip that Washington's supplier (and other co-conspirator) had to make for each transaction, which would not have been financially worthwhile for small amounts of heroin. Based on the evidence, the Court found that each of the four transactions involved 25 logs of heroin, adding a total of 100 logs, or 104 grams, to the total drug amount attributed to Washington for sentencing purposes.

The Court also heard evidence about a firearms enhancement pursuant to U.S.S.G. § 2D1.1(b)(6). Following Washington's arrest, investigators searched his girlfriend's house, where Washington regularly stayed overnight. Agents located a loaded handgun near more than $1000 in cash. Washington argued that the gun was not connected to his

3

drug trade, making the firearms sentencing enhancement inappropriate. He pointed out that the gun was not on him during his arrest, was never seen on him during surveillance, and neither his DNA nor his fingerprints were found on the gun.

In response, the Government presented evidence that Washington possessed his gun outside the home. In one recorded call between Washington and his girlfriend, Washington demanded that she bring "[his] gun, [his] money" and said that he was "runnin' around out here . . . without [his] strap[,]" a term for gun. App. 165-66. The Government argued that the call, in combination with the recovery of the loaded, readily accessible handgun in close proximity to a large amount of cash, demonstrated a clear probability that Washington possessed it in connection to his drug trade. The District Court agreed and applied the firearm enhancement.

With the drug attribution and firearm enhancement, the District Court calculated an offense level of 25 and a Criminal History Category of IV, resulting in an advisory sentencing guideline range of 84-105 months. Washington argued for a sentence on the lower end of the range in light of, among other factors, his post-traumatic stress disorder ("PTSD") arising from the fact that he was shot in 2014, and the lower sentences that his co-conspirators received. In its consideration of the 18 U.S.C. § 3553(a) factors, the Court took into account the "very serious emotional consequences" of Washington's shooting and addressed the disparities between Washington's sentence and those of his co-conspirators, emphasizing the differences in their criminal histories. App. 273-74. The Court sentenced Washington to 96 months' imprisonment.

Washington appeals his sentence.

4

II[3]

Washington disputes the District Court's factual findings as to the amount of drugs attributed to him for the July 2, 4, 7, and 11, 2016 transactions and its imposition of the firearm enhancement. Washington also advances two arguments challenging the substantive reasonableness of his sentence, asserting that the Court failed to give appropriate weight to his PTSD and that his sentence was unfair in light of the lower drug sentences his co-defendants received. We will address these arguments in turn.

A

A district court's "factual findings relevant to the Guidelines[,]" such as drug estimates, are reviewed for clear error.[4] United States v. Grier, 475 F.3d 556, 570 (3d Cir. 2007) (en banc); United States v. Collado, 975 F.2d 985, 998 (3d Cir. 1992). The Sentencing Guidelines provide that, in determining the drugs attributable to the defendant, a court may consider "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant." U.S.S.G. § 1B1.3(a)(1)(A). For conspiracies, as here, a court may also look to "all acts and omissions of others" within the scope of the joint undertaking, in furtherance of the crime, and which are reasonably foreseeable. Id. § 1B1.3(a)(1)(B). In calculating drug quantity, "some degree of estimation must be permitted," Collado, 975 F.2d at 998, and

---

[3] The District Court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

[4] "A finding is clearly erroneous when[,] although there is evidence to support it, the reviewing [body] on the entire evidence is left with the definite and firm conviction that a mistake has been committed." United States v. Grier, 475 F.3d 556, 570 (3d Cir. 2007) (en banc) (alterations in original) (internal quotation marks and citation omitted).

we do not require the adoption of conservative drug estimate quantities. See United States v. Miele, 989 F.2d 659, 665-66 (3d Cir. 1993). Rather, "[w]here there is other evidence to support the higher end of an estimated range, the court may certainly rely on the higher estimate." Id.

In this case, the District Court was presented with recorded (and, in one case, physical) evidence from eight of the twelve drug transactions that showed a pattern of dealing in amounts from 25 to 50 (and, in one case, 60) logs of heroin. Though there were no recorded conversations between conspirators revealing specific amounts associated with the remaining four sales, the Court did not err in attributing 25 logs—the smallest amount involved in the other transactions—to Washington for each of these sales. Indeed, as Corporal Smith testified, 25 logs represents a conservative estimate in light of the conspirators' prior dealings, the distribution pattern of Washington's sub-distributor, and the risk that each transaction presented to Washington's supplier, who traveled across two major cities to meet him on each occasion. While a district court is not required to adopt conservative estimates when deciding between plausible drug quantity attributions, Miele, 989 F.2d at 665-66, the District Court nonetheless did so and did not err in finding that the Government demonstrated by a preponderance of the evidence, United States v. Paulino, 996 F.2d 1541, 1545 (3d Cir. 1993), that at least 25 logs of heroin changed hands in each of the July 2, 4, 7, and 11, 2016 transactions. As a result, its attribution of 100 logs of heroin to Washington for these sales was not clear error.

Nor was it clear error to apply the firearm enhancement. The Sentencing

6

Guidelines provide for a two-level increase for those convicted of drug trafficking "[i]f a dangerous weapon . . . was possessed." U.S.S.G. § 2D1.1(b)(1). For the enhancement to apply, the Government must demonstrate, by a preponderance of the evidence, that the defendant possessed a weapon. See United States v. Napolitan, 762 F.3d 297, 309 (3d Cir. 2014). It did so here, as Washington admitted he owned the firearm at issue when he pled guilty to Count II for illegal possession of a firearm.

Once the Government proves the defendant possessed a dangerous weapon, the defendant may avoid the enhancement only by demonstrating that it is "clearly improbable that the weapon was connected with the offense." Id. at 308 (quoting U.S.S.G. § 2D1.1 cmt. n.11), 309; United States v. Drozdowski, 313 F.3d 819, 822-23 (3d Cir. 2002). The "clearly improbable" determination involves four considerations:

> (1) the type of gun involved, with clear improbability less likely with handguns than with hunting rifles, (2) whether the gun was loaded, (3) whether the gun was stored near the drugs or drug paraphernalia, and (4) . . . whether the gun was accessible.

Drozdowski, 313 F.3d at 822-23 (internal citations omitted).

The evidence shows that Washington had (1) a handgun which was (2) loaded and (3) found near $1000 in cash (4) hidden in a readily accessible location in a house where he regularly stayed the night. Washington's arguments that he was not seen with the firearm during surveillance, and that neither his fingerprints nor his DNA were found on the gun do not diminish the fact that, during an intercepted call between Washington and his girlfriend, he demanded that she deliver his gun while he was "runnin' around out here," App. 166, and that Washington stored the gun in a manner seemingly designed to

7

ensure that it would be available in the event that he had to protect his drug proceeds. On these facts, Washington failed to demonstrate that a connection between his drug dealing activity and the firearm was "clearly improbable," and so the District Court did not err in imposing the firearm enhancement.

B

Washington also argues that his sentence was substantively unreasonable. When reviewing for substantive reasonableness, we consider the totality of the circumstances, applying a highly deferential abuse of discretion standard. United States v. Bungar, 478 F.3d 540, 543 (3d Cir. 2007). A sentence is substantively unreasonable when "no reasonable sentencing court would have imposed the same sentence on that particular defendant for the reasons the district court provided." United States v. Tomko, 562 F.3d 558, 568 (3d Cir. 2009) (en banc).

Washington first argues that his within-Guidelines sentence of 96 months is substantively unreasonable because the District Court gave little weight to "the mitigating quality" of his PTSD. Appellant's Br. 15. This argument fails. The Court considered Washington's PTSD, and it did not act unreasonably by giving less weight than the "[D]efendant contends [it] deserve[s.]" Bungar, 478 F.3d at 546. Mindful of Washington's PTSD, the District Court issued a sentence in the middle of the Guidelines range despite Washington's significant role in this "fairly large scale heroin distribution conspiracy" and the fact that this was Washington's "third serious drug distribution conviction." App. 270-72. The Court therefore did not abuse its discretion in its consideration of Washington's PTSD.

Washington's argument that his sentence was unreasonable because it differs from those his co-conspirators received also fails. These sentencing disparities were not unwarranted; they reflected the conspirators' widely divergent criminal histories and the fact that Washington has several prior drug-related convictions. See United States v. Parker, 462 F.3d 273, 278 (3d Cir. 2006) (noting that "[18 U.S.C.] § 3553(a)(6) by its terms plainly applies only where co-defendants are similarly situated[,]" and holding that defendants with different criminal histories are not similarly situated).

Because Washington's arguments are unavailing, and we cannot say no reasonable sentencing court would have imposed the same sentence, we hold that the District Court did not abuse its discretion in sentencing Washington to 96 months' imprisonment.

III

For the foregoing reasons, we will affirm Washington's sentence.